FANNY J. COLEMAN AND HUSBAND *v.* J. M. SEMMES ET AL.

1. MARRIED WOMAN. *When bound by acts of husband. Arbitration of her interests.*
  Where a married woman knowingly and willingly permits her husband to manage and deal with her separate property as he may see fit, she will be bound by his acts and agreements in respect thereto; and in such case he may submit her rights and interests in respect to her property to arbitration, and his agreement to abide the award will bind her estate.

2. SAME. *Her money invested in lands by husband. His power to convey same.*
  Where a married woman (prior to the Code of 1857) willingly allowed her husband to use her money as his own to buy land, taking the title in his own name, and to deport himself in all matters relating thereto as the owner, he could dispose of the same, or make binding contracts in reference thereto, and she cannot be permitted to defeat his conveyance thereof on the ground

of a resulting trust in her, nor to undo what he has done in any particular in connection therewith, except upon the terms on which he would be permitted to do so. In such transactions he and she are considered as one.

APPEAL from the Chancery Court of Panola County.

Hon. J. C. GRAY, Chancellor.

Fanny J. Semmes and James M. Semmes, brother and sister, were the joint owners of a plantation in Lowndes County. Fanny married A. G. Coleman, and he became the guardian of James, who was a minor. Coleman and wife, and James M. Semmes, who was about nineteen years old, agreed to sell the plantation in Lowndes, with the view of buying lands in Panola; and accordingly it was sold, in 1856, for $19,000, one-half of which was paid in cash to Coleman, and for the other half the purchaser gave his note, payable to Coleman. Coleman and wife conveyed to the purchaser an undivided half-interest in the land, for the consideration, as expressed, of one-half of the amount of the purchase-money. In 1858, James M. Semmes, having become of age, conveyed to the purchaser the other undivided half-interest in the land, for the consideration, as expressed, of the amount of the deferred payment of purchase-money. It is claimed by Coleman that Semmes received the one-half of the purchase-money due on the note given by the purchaser; but the latter denies having received but $7,000 of that amount.

In 1856, Coleman bought section 11, township 18, range 9, in Panola County, for $2,600, which was paid for either with the joint means of his wife and Semmes, or with hers alone. In February, 1857, Coleman bought section 2, town-8, range 9, in Panola County, for which he was to pay $6,400. Of that amount he paid $3,200 in cash, and gave his notes for the balance. The cash payment was made with means derived from the same source as that used in paying for section 11. He took the title to section 11 in his own name, and took a bond for title to section 2 to himself. In the year 1856, or 1857, Coleman also bought lands in Bolivar County, which were paid for in the same way as sections 11 and 2.

The plantation in Lowndes had been cultivated by the slaves of Mrs. Coleman and Semmes for their joint benefit, and the lands in Panola were cultivated in the same way up to 1860. At that time, the property of Mrs. Coleman and Semmes, realty and personalty, was divided by A. G. Coleman and Semmes, the former acting for his wife. By this division, Semmes got six hundred and twenty acres of section 2, and Mrs. Coleman got section 11 and twenty acres of section 2. But it was agreed that Coleman should pay one-half of the $3,200 remaining unpaid on section 2, leaving the other half to be paid by Semmes. No conveyances were made, and Semmes and Mrs. Coleman were both ignorant of the facts that the title to section 11 and the bond for title to section 2 were taken in the name of A. G. Coleman. Semmes, who had been previously residing with Coleman, took possession of section 2, and moved upon it. The war came on, and no part of the balance due on section 2 was paid. In 1866, or 1867, the vendor commenced proceedings to subject the land to sale for the purchase-money unpaid. In April, 1867, Coleman conveyed the east half of section 11 to Mrs. M. O. Semmes, the wife of James M. Semmes, for a nominal consideration. Some months thereafter, Coleman took the benefit of the bankrupt law. Section 2 was sold under a decree for the balance of the purchase-money, and bought by N. R. Sledge, in 1870, who agreed with Semmes to convey it to him if Semmes would repay him the amount paid for the land.

Coleman and Semmes, the former acting for his wife, constituted Sledge an arbitrator, and submitted all the matters between them to his adjustment. And, in accordance with the award rendered, an agreement was signed by Coleman, as agent for his wife, and by Semmes, by which it was agreed that Mrs. Coleman should relinquish her claim to certain land in Bolivar County, and that she and her husband should pay to Sledge $2,000 towards relieving section 2, for Semmes's benefit. Mrs. Coleman made a quitclaim deed of the Bolivar County land, in pursuance of the agreement, but no part of the $2,000 was paid. In 1873, Mrs. Semmes died, and in 1874,

her heirs, by their next friend, brought an action of ejectment to obtain possession of the east half of section 11, Coleman still being in possession. Mrs. Coleman allowed her husband to use, manage, and dispose of her property without objection, and without asserting her own claim, till the year 1874. She and her husband filed the bill in this suit to enjoin the action of ejectment. The bill claimed that the land was paid for with Mrs. Coleman's sole means, though the title was taken in her husband's name; that he, without her knowledge or consent, conveyed it to Mrs. Semmes without any consideration, and, therefore, that it belonged to her, and not to the defendants. The defendants answered, denying the allegations of the bill. Upon final hearing, the bill was dismissed; and the complainants appealed.

*Craft & Cooper*, for the appellants.

1. The record establishes the fact that the Panola County lands were bought with the money of Mrs. Coleman. Mrs. Coleman conveyed her half-interest in the Lowndes County lands for one-half of the purchase-money, which was received in cash, and used in buying the lands in Panola. A year afterwards, Semmes conveyed the other half of the land in Lowndes, and in the deed acknowledged the payment of the balance of the purchase-money. But, if Coleman undertook to sell the land as a whole, and to receive the cash payment for both his wife and Semmes, the transaction, in law, was only a sale of Mrs. Coleman's interest, and a payment for that interest. Semmes could affirm or disaffirm. In law, his interest was not sold till he made his deed and received pay therefor. He could not, then, have claimed a share in the Panola lands, bought with the first payment on the Lowndes County lands, for he had elected to take the money received by the last payment. Mrs. Coleman's rights in respect to the proceeds of the Lowndes lands cannot be complicated with those of her brother, or affected by the action of his guardian. When Coleman bought the lands in Panola, and took the title in his own name, a trust resulted to his wife.

2. Mrs. Coleman's right to have the trust in her favor de-

clared in this suit has not been impaired, released, taken away, or destroyed by any agreement or conveyance of the trustee, or any equities between him and Semmes, or any other person, growing out of his conduct. The conveyance to Mrs. Semmes was voluntary, made without the knowledge of any one except Coleman himself, upon no contract or agreement with any one, and without any consideration. The only legal effect of this conveyance was, to place the title in Mrs. Semmes and her heirs, subject to the trust in favor of Mrs. Coleman. The most that the appellees can claim is, to have the deed to Mrs. Semmes held as a mortgage to secure the $2,000 found due to Semmes. If it is made to have this effect, foreclosure in equity, and not an action of ejectment, was their remedy. Therefore, the action of ejectment was properly enjoined. The agreement upon the award of Sledge could not, in any court, amount to more than a mortgage by Mrs. Coleman of her property for her husband's debt. Upon the whole record, the appellants are entitled to the relief sought. Code 1857, p. 336, art. 24; Code 1871, sect. 1779; *Brooks* v. *Shelton*, 54 Miss. 353; *Porter* v. *Caspar*, 54 Miss. 359; *Taylor* v. *Smith*, 54 Miss. 50; *Klein* v. *McNamara*, 54 Miss. 90.

*Henry Craft*, of counsel for the appellants, argued the case orally.

*Harris & George*, for the appellees.

1. Mrs. Coleman, as she says, surrendered to her husband's control her money and other property, confiding in his judgment and justice to advance their interests. The Code of 1857 cannot be applied in this case, the purchase of the land in controversy having been made prior thereto. Before our statutes on the rights of married women, when the wife allowed her money to go into the hands of her husband, no resulting trust arose from his use of it. Schouler's Dom. Rel. 120, 150. At common law, when the wife converted her lands into money, the money became the property of the husband. The acts of 1839 and 1846 did not affect the rights of the husband, except as to the usufruct of the wife's

lands. *Knight* v. *Whitehead*, 26 Miss. 245 ; *Mitchell* v. *Mitchell*, 35 Miss. 108 ; *Garrison* v. *Fisher*, 26 Miss. 352. But, in our view of the case, it is immaterial whether the acts of Coleman be referred to his power as owner, or to the unreserved power which his wife gave him over the money, as hers. There was no restriction upon her as to the extent to which she might surrender her power and will over her money. She stood as a *feme sole*, as any other individual owning money. *Harding* v. *Cobb*, 47 Miss. 599 ; *Shearman* v. *Elder*, 24 N. Y. 381.

2. The division of the joint property in 1860 lacked nothing to complete it, so far as the power of the husband was concerned. Freem.. on Co-ten. & Par. 507, 533. The conveyance to Mrs. Semmes, in 1867, was based on the consideration that the title to section 2 in her husband was about to be lost. If the conveyance to Mrs. Semmes was only a mortgage for the $2,000 due Semmes, as the appellants claim, what is the equity against the mortgagees? The condition being broken, they have the right of possession, and are entitled to the rents and profits to pay the debt. 1 Jones on Mort. 707, 708. The appellants have no equity, for they have not performed, or offered to perform, the agreement upon which they rely. Without an offer to redeem, the mortgagees' action cannot be resisted, for the recovery in ejectment will not prejudice the rights of appellants.

*L. C. Balch*, on the same side, filed an elaborate brief on the facts of the case.

*J. F. Simmons*, on the same side, also filed a lengthy brief.

*W. P. Harris* and *L. C. Balch*, of counsel for the appellees, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

Mrs. Coleman must be held bound by her husband's acts in his dealings with James M. Semmes, as disclosed by this record.

She permitted her husband to deal with her property and manage her pecuniary matters as he pleased. He was her brother's guardian, and her representative. He acted for his wife with her knowledge and consent, and for his ward, in establishing their plantation in Panola, after the sale of the plantation in Lowndes, which was sold, by agreement of all parties, for the purpose of transferring their planting interest to Panola. Mrs. Coleman confided every thing to her husband.

The two must be considered as one in reference to the transactions had with Semmes. Coleman's settlements must be upheld as his wife's, and her rights must be adjudged accordingly; for he represented her, and acted for her, and she is concluded by his acts.

The division of the property of Mrs. Coleman and her brother, in 1860, and the agreement in accordance with the award of Sledge, in 1871, fixed the rights of the parties to it, and by these transactions and subsequent events their rights must be determined. The legal title of the east half of section 11 was vested in the wife of Semmes by the deed of Coleman, made April 4, 1867, and it is to be treated as if it were vested in Semmes himself. That conveyance was doubtless made in recognition of the claim Semmes had on Coleman by reason of the division of land in 1860, and subsequent events; and whether intended as a mere security, or to keep the property in the family in spite of contemplated bankruptcy, and therefore so made as to be successfully defended in case of attack as without legal consideration, the deed had the effect to put the legal title in Mrs. Semmes, and subsequently it was recognized as being in her, and the settlement made by Sledge in 1871 was upon this assumption. The adjustment of 1871 was conformed to by Mrs. Coleman in her relinquishment of claim to the Boliver lands, but the $2,000 stipulated to be paid to Sledge for Semmes has not been paid, in whole or in part; and, manifestly, the legal title of Mrs. Semmes, devolved by descent upon her children, cannot be divested without

performance of the conditions on which it was stipulated to be done.

Whatever rights the parties have, grow out of the agreement in pursuance of the award of Sledge. All differences were submitted to Sledge, and the agreement made in pursuance of his award is the measure of the rights of the parties.

We are not unmindful of the fact that Mrs. Coleman was a married woman, and under the legal disabilities of one, but she could do as she chose with her money derived from the sale of the land in Lowndes ; and having permitted her husband to use it as his own, to buy land and take the title to himself, to stand forth in all matters as owner, and to make contracts upon that basis, she cannot be permitted to undo what he did, except on the terms on which he may be permitted to do so.

We reverse the decree only for the purpose of dismissing the bill without prejudice to the right of Mrs. Coleman to exhibit a bill to enforce any right she may have by reason of the agreement on the terms of award by Sledge, if she shall be so advised, but all costs of this case in both courts shall be paid by appellants.

CHALMERS, J., concurring.

The testimony establishes knowledge on the part of Mrs. Coleman that her husband, in his dealings with his former ward, was treating the land, the legal title to which was in his name, as his own property, or as the joint property of his ward and wife, and that the settlements and agreements between them were assented to by the ward on that basis, or, at least, in the belief that Mrs. Coleman acquiesced in them, and would never interpose any equitable rights of hers in opposition to them. That such was the common understanding between all the parties I entertain no doubt. Inasmuch, however, as Semmes was fully aware of his sister's (Mrs. Coleman's) equitable ownership of the land, he could not, in my opinion, resist the assertion by her of her rights if the investment of her

money had taken place under the Code of 1857 or that of 1871, since under both Codes the husband who has invested his wife's means in property, the title to which is taken in his name, is made an express trustee for her, and her rights may be asserted against all who have notice of them. Code 1857, p. 336, art. 24; Code 1871, sect. 1779.

But the investment, in this case, occurred in February, 1857, when we had no such principle in our law. Mrs. Coleman, therefore, is not to be regarded as a wife, but like a person *sui juris*, who has permitted another, clothed with the legal title to her property, to deal with it as his own, and upon the faith of it to come under obligations concerning it to others. As a person *sui juris* would not be allowed to defeat such obligations. by setting up a resulting trust in the property, so, under the circumstances of this case, Mrs. Coleman will not. She had a perfect right to give her money to her husband. With her money he bought land, taking title in himself. Whether she was aware of the fact or not, she permitted him for years to treat it as his own, and in all the dealings with her younger brother, his ward, to divide one portion and pledge the other as if it was either his own property or the common estate of his ward and of his wife. That she had general knowledge of these things, if not specific information of the details, there can be no doubt.

Being protected by no special statute, a court of chancery will not set up for her a resulting trust, to the injury of her brother, who settled with his former guardian on the faith of her acquiescence in her husband's acts. A resulting trust will never be set up where it will operate as a fraud, or work injustice to third persons.