LINCOLN *v.* MILLS *et al.*

(In Banc. June 9, 1941. Suggestion of Error Overruled Sept. 22, 1941.)

[2 So. (2d) 809. No. 34624.]

Pollard & Hamner, of Greenwood, and **John F. Frier-son**, of Columbus, for appellant.

**Owen & Garnett,** of Columbus, and **Will E. Ward,** of Starkville, for appellees.

Pollard & Hamner, of Greenwood, and **John F. Frier-son,** of Columbus, for appellant, in reply.

Argued orally by **John F. Frierson** and **W. M. Hamner**, for appellant, and by **Will E. Ward**, for appellees.

**Alexander, J.,** delivered the opinion of the court.

Appellant's suit in ejectment was transferred to the Chancery Court, whereupon she filed her bill setting up that she was the owner of lot No. 7 of square 60, north of Main Street in the city of Columbus. This claim was sought to be based upon her purchase of this property at a foreclosure sale under a deed of trust executed by E. S. Moore in favor of C. L. Lincoln. The defendants are the heirs at law of Mrs. Alice H. Moore, who was the wife of E. S. Moore.

The salient facts as shown by the testimony and by stipulation of counsel are as follows: This property being part of Sixteenth Section School Lands, was held by E. S. Moore under a ninety-nine year lease, dating from August 1, 1821. This lease, executed by the trustees of Franklin Academy, was "renewable forever" at the option of the lessee. (For history of these lands, see Street v. City of Columbus, 75 Miss. 822, 823, 23 So. 773.) It expired August 1, 1920. Prior to its expiration date E. S. Moore executed a deed of trust in favor of C. L. Lincoln to secure an indebtedness in the original sum of $1,878. Upon the expiration of the lease it was not renewed by E. S. Moore, although the records of the City of Columbus show that the sum of $5 was fixed as a charge for drafting renewal leases, and, further, that a receipt dated August 31, 1920, was by it issued in the

name of E. S. Moore in the sum of $5.50, reciting that $5 was for attorney's fee and fifty cents was for notary fee for renewal lease.

The deed of trust referred to was dated June 12, 1917. About a year after the expiration date of the lease on August 1, 1920, E. S. Moore and his wife, who had theretofore lived on other property, moved upon the property here involved and continued to occupy same as their home until their deaths, in the years 1936 and 1938, respectively. The deed of trust was marked satisfied and canceled by C. L. Lincoln by marginal notation dated October 10, 1924, which recited that a new renewal note and trust deed had been executed. A new deed of trust to secure the sum of $2,600 was in fact executed the same day, and this was later foreclosed and trustee's deed executed September 29, 1937, to appellant.

In the meantime a lease to the property was executed by the City of Columbus (successors to the trustees of Franklin Academy) to Mrs. Alice H. Moore. This lease recited that it was "made in lieu of a lease made to the said Mrs. Alice H. Moore prior to August 1, 1920." It was dated October 20, 1925, and on that date duly lodged for record. Mrs. Moore resided thereon until her death thirteen years later. Upon the hearing the trial court decreed that the complainant (appellant) was not entitled to the property nor to the relief prayed for.

There are many interesting questions presented by appellant relating to the status of Mrs. Moore as a resulting trustee or trustee ex maleficio holding this property under her lease for the use and benefit of the mortgagee, C. L. Lincoln, who had the right to assume and request that the renewal lease be executed to E. S. Moore, who alone had the option to renew. We shall not discuss these contentions, since appellees base their rights solely upon title by adverse possession through the ownership, use and control exercised under the color of title given by the lease to their mother, Mrs. Alice H. Moore. Upon the issue of adverse possession certain matters in pais are

relevant. These include collection of rents on the property by Mrs. Moore prior to acquisition of her lease, and the payment by her of taxes upon assessments in her name after 1935. For a greater number of years, however, the land was assessed to Mr. Moore and tax receipts issued in his name. In 1923, 1924 and 1931, E. S. Moore, by marginal notations and a renewal deed of trust, acknowledged the indebtedness to C. L. Lincoln, asserting thereon that the property was not his homestead. In 1927 E. S. Moore gave a warranty deed to the property to L. J. Barksdale, a son-in-law, who in turn conveyed it back in 1931.

These acts are such as would be relevant upon an issue of adverse possession to be resolved alone by circumstantial evidence. Yet the appellees' claim is based upon more solid ground. The lease was issued to Mrs. Moore by the city of Columbus in 1925, and the uncontradicted testimony shows that the husband not only had constructive knowledge of its execution, but had actual knowledge of its contents. On several occasions he had shown the lease to his daughters, and assured them that his wife owned the property. The children, upon these assurances during his lifetime, had expended the sum of $836.20 for repairs, in order that their mother might be provided with a comfortable home. Any attempt to reconcile all the acts of the several parties with any theory deducible from such acts as mere circumstances must fail. The contentions of opposing counsel, although vigorously asserted, are considerately restricted to charges which fall short of implications of fraud or connivance. It remains clear, however, and it is controlling, that there was at least color of title in Mrs. Alice H. Moore through the lease to her, and her assertions of ownership and control thereunder for over ten years, all of which was with the knowledge and consent of the husband.

Regardless of whether a wife may be permitted to acquire, as against her husband, title to the homestead by the mere assertion of title or other acts in pais, it is settled

in this state that, where the wife holds the homestead under color of title arising from a recorded conveyance in her name, and evinces her claim by acts of ownership and control, all to the knowledge of the husband, she may acquire complete title thereto by adverse possession for the statutory period.

In Hartman v. Nettles, 64 Miss. 495, 8 So. 234, the husband held a deed from one Evans, who later under the mistaken notion that he could revoke the deed to the husband, executed another deed to the wife. In discussing the effect of the second instrument as color of title, the court said: "But this deed, though ineffectual of and by itself to vest any title in the wife, was sufficient color of title to ripen into a perfect one by the lapse of time. She has held possession under it for more than 20 years, claiming the land as her own; and, though the husband has also resided upon the premises and cultivated the lands, his occupancy has been in recognition of and in subordination to the wife's claim, and not in his own right as owner. Under such circumstances, the husband would be barred by limitation of any action to recover the possession from the wife; and, since the husband is barred, so also is the creditor, since he could only subject to sale under execution the interest of the husband in the land."

In Massey v. Rimmer, 69 Miss. 667, 13 So. 832, the husband altered a deed by erasing his name as grantee and inserting the name of his wife. It was held that since this procedure, however irregular, was for the purpose of vesting title in the wife, the statute of limitations began to run in her favor from that time and that her title in the land was perfected after the lapse of ten years. See, also, Potter v. Adams, 125 Mo. 118, 28 S. W. 490, 46 Am. St. Rep. 478; McPherson v. McPherson, 75 Neb. 830, 106 N. W. 991, 121 Am. St. Rep. 835. In the instant case the husband's knowledge of and acquiescence in the issuance of the renewal lease in the wife's name furnish a pertinent analogy.

The maturing of title to the land in the wife by adverse possession operated completely to divest not only the husband of any claim or right of title thereto, but also all creditors or lienors claiming through him, since the title of the wife is not a derivative but an independent paramount title. Niles v. Davis, 60 Miss. 750; Gordon v. Anderson, 90 Miss. 677, 44 So. 67; McClanahan's Adm'r et al. v. Norfolk & W. Ry. Co., 122 Va. 705, 96 S. E. 453; Virginia & W. Va. Coal Co. v. Charles, 4 Cir., 254 F. 379; Potter v. Adams, supra; 2 C. J. S., Adverse Possession, 804, sec. 200.

This is a case, the determination of which must cause loss to those who, though entirely without conscious fault, have builded their claims upon insecure assumptions not reinforced by law. The learned chancellor held that the equities and the law favored the appellees, to which view we are compelled to give assent.

Affirmed.

### On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

Appellants suggest to the Court that in its original opinion full consideration was not given to an alleged trust relationship between Mr. and Mrs. Moore and to the right of Mr. Moore to renew the lease in his name at its expiration.

Analogies drawn from the law of cotenancy are not helpful since the complete emancipation of married women from all disabilities of coverture makes irrelevant a consideration of obligations inter se. Mrs. Moore alone held the title by lease to the property. There is no dispute between husband and wife or their respective successors in title. It is true that the appellant, as an alleged successor in title to C. L. Lincoln, the mortgagee, claims that the lease should have been renewed by Mr. Moore so as to protect the mortgagee's security. But it was not so renewed, and appellees are correct in their

statement that such renewal was optional and could not have been compelled.

Since the decision was based upon appellees' title by adverse possession, intimations of possible fraud are now more urgently pressed by appellants than in their original brief. Since no proof of covinous design has been adduced to overturn the presumption of good faith (Virden v. Dwyer, 78 Miss. 763, 30 So. 45), any discussion of the possibilities thereof assumes the aspect of an attack upon the principle announced in Hartman v. Nettles, 64 Miss. 495, 3 So. 234, and Massey v. Rimmer, 69 Miss. 667, 13 So. 832. To these cases and others cited in the original opinion may be added Collins v. Lynch, 157 Pa. 246, 27 A. 721, 37 Am. St. Rep. 723; Lantry v. Wolff, 49 Neb. 374, 68 N. W. 494.

Regardless of what may have been our views if this were a case of first impression, these cases have controlled property rights for over fifty years and no legislation has been passed to modify their effect. We are unwilling to overrule them.

It should not be overlooked that when the lease to Mr. Moore expired all the rights of the mortgagee therein fell with it. This is the pivotal circumstance in the case, and it is to this omission that the mortgagee must attribute his loss. What happened thereafter in regard to its acquisition by another could indeed be deemed irrelevant except as it may involve the title of the new lessee. Arguments of counsel have however made this an issue and we have responded thereto. Had claim of appellees been placed upon the mere fact of the execution of the lease to Mrs. Moore and its validity upheld, all other questions would have been put out of view since the mortgagee was not induced to cancel his deed of trust and procure a renewal by any fraud or act of appellees, and mistake is not involved, and since the deed of trust, through whose foreclosure appellant seeks title, was executed after the mortgagee had record notice of the lease to Mrs. Moore, the situation is much as if there had been a

failure of a lessee to renew and the granting of a new lease to a stranger.

The relation of husband and wife constitutes no complication or exception since neither fraud nor mistake is shown. Analogies which involve fiduciary relationships are therefore not here in point. The transaction was in the open and public record made thereof. A mortgagor of realty may cause loss to his mortgagee by allowing his land to sell for taxes or be foreclosed under a prior mortgage or lost by an adverse possession. The mortgagee is under some duty to keep advised as to his seccurity. Here the loss resulted from mortgagor's failure to exercise his option to renew the lease.

Suggestion of error overruled.

DISSENTING OPINION.

**Anderson, J.**, delivered a dissenting opinion.

In my opinion the suggestion of error in this case ought to be sustained and the judgment appealed from reversed and judgment rendered here for appellant.

The controlling opinion states the material facts. There is no dispute about them. Under those facts it would be most unjust, unfair, and dishonest on the part of both the husband and the wife to permit her to acquire title against him by adverse possession or otherwise and thereby defeat his mortgagee when without dispute he owned the land at the time the first mortgage was taken. Husband and wife living together as such are one. They occupy a relationship of trust toward each other. There could be no such thing as adverse possession between them to the extent of affecting his mortgagee. Title by adverse possession of the land cannot be acquired unless such possession is open and notorious. Nor, on account of such trust relationship, can one acquire title from the other by conveyance. It is true there is no decision of our Court directly in point sustaining that view, but there are numerous cases announcing principles which mean exactly that. To illustrate: The cases holding

that a tenant in common cannot acquire title against his co-tenant either by adverse possession or otherwise; the relation of trust between them prevents it. Shelby v. Rhodes, 105 Miss. 255, 62 So. 232, Ann. Cas. 1916D, 1306. The land owned in common tenancy, sold under a deed of trust given by a former owner, purchased by one of the co-tenants inures to the benefit of all. Beaman v. Beaman, 90 Miss. 762, 44 So. 987. If one of several co-tenants of land subject to a life estate buys in a tax title to the land, he will obtain an absolute title to the life estate but will hold the fee in trust for the co-tenants. Fox v. Coon, 64 Miss. 465, 1 So. 629. If one of several tenants in common purchases the land at a tax sale, either by himself or through a third person, the title thus acquired inures to the benefit of all the co-tenants. Hardy v. Gregg (Miss.), 2 So. 358; Cohea v. Hemingway, 71 Miss. 22, 14 So. 734, 42 Am. St. Rep. 449. The husband of a co-tenant of lands cannot acquire title as against her co-tenants by purchase at a tax sale, for the reason that the law imputes to him knowledge of the facts which would make such a purchase by her void as against her co-tenants. Robinson v. Lewis, 68 Miss. 69, 8 So. 258, 10 L. R. A. 101, 24 Am. St. Rep. 254. A widow, holding an interest in land as tenant in common, as one of the owners of her husband's estate, does not acquire title thereto merely by an act of purchase by tax deed. Falkner v. Thurmond (Miss.), 23 So. 584. Where a married woman permits her husband to manage her separate property, she cannot repudiate his acts, nor assert a resulting trust as against a bona fide purchaser from the husband. Coleman v. Semmes, 56 Miss. 321.

If Hartman v. Nettles, 64 Miss. 495, 8 So. 234, and Massey v. Rimmer, 69 Miss. 667, 13 So. 832, hold to the contrary, they ought to be overruled upon the ground that they are unsound and most harmful in their effects. However, there is a very marked difference between the facts of those cases and the present case. In neither of those cases was a mortgagee creditor's rights involved.

In one it was the rights of a simple, unsecured creditor, and the other the rights of the heirs of the husband. There was nothing in either of those cases to call the attention of the legislatures which have convened since to the principles announced in the controlling opinion in the present case.

I am therefore unable to see how the failure of the legislature to act amounted to an approval of the principles here involved.