## SUPREME COURT.

THE PEOPLE *ex. rel.* LUCY L. CRANDALL, and others, appellants, agt. THE BOARD OF SVPERVISORS OF ALLEGANY COUNTY, respondents.

Commissioners of highways are required by statute, before they shall determine to lay out any highway, to cause notice in writing to be given to the *occupant of the land* through which the road is to run, of the time and place at which they will meet to decide on such application. And they acquire *no jurisdiction* until they have given such notice.

Where a highway was proposed to be laid out through a field of about eighteen acres, used as a pasture, and in which was a *reservoir* formed by springs of water of eighteen and a half feet in diameter, which had been conveyed by deed by the occupants' ancestor to the Erie Railway Company, who thereafter and then used the water therefrom, by means of pipes for the benefit of their railroad, such reservoir being covered with plank, earth, and turf, so that cattle in the pasture stood upon and passed over it, as over other portions of the lot, and the proposed highway being laid out directly over the reservoir :

*Held,* that notice served upon the *occupant of the lot* only, was sufficient to confer jurisdiction upon the proper authorities to lay out the highway.

The Erie Railway Company is not predjudiced by such notice, as its reservoir cannot be disturbed until it is compensated, and as owner it is entitled to notice of the proceedings to assess the damages.

APPEAL from order of special term, denying motion for peremptory *mandamus* after verdict upon issues, formed upon return of respondents, and plea of relator.

HAKES & STEVENS, *for appellants.*

I. The verdict as settled in this case, is not such a verdict as can be said to be found in favor of the defendants so as to entitle them to judgment, within the meaning of the statutes (2 *Revised Statutes,* 587, § 57 ; 26 *N. Y. R.,* 318.)

The verdict as found is in favor of the relators on most of the material facts at issue by the return, and the plea to the return. The return of the defendants, not only by a direct denial that any highway was duly laid out, but by a

People agt. Supervisors of Allegany Co.

direct allegation that there was no highway is found by the verdict to be false. The reply, or plea to the return, setting out in full the several steps required by statute to duly lay out a highway are all found in favor of the relators. The defendants having gone to trial upon the issues presented by the plea to the return, without making a motion to correct any irregularity, if any, in setting out more fully the facts in the plea than were set forth in the writ, cannot claim a verdict found in their favor, since the verdict finds all the material allegations set out in both the plea and writ in favor of the relators, and against the defendants.

It follows then that the return was a false return, although true in part.

This case is not such a one as calls for the application of the very harsh rule, which in effect defeats a party who may have all the facts found in his favor which entitle him to the relief sought.

It will be seen that the relators could not safely demur to the return, which showed that there was no highway, while the facts as settled by the verdict, as is claimed, entitles the relators to judgment.

II. The verdict shows that, at least as to the land taken for the highway, belonging to the relators, no irregularity exists, in any step, from the application to the assessment of damages. This being true, the commissioners of highways have the power, if not already done, to open the road within six years; or if the road is already opened across the relators land, they cannot shut up the road. (28 *N. Y. R.*, 479.) Just compensation is deemed to be made when damages are assessed. (*People* agt. *Supervisors of Westchester* 4, *Barb.*, 64.)

Even an assessment is not necessary. (6 *Wend.*, 635.)

A board of supervisors have nothing to do with the merits, but must assess highway damages. (5 *Cowen*, 292.) There can be no claim but that the referees had jurisdiction to award the relators damages. The party for whose bene-

fit damages are assessed may waive any irregularity, if any. (4 *Paige*, 522 ; 6, *Id.*, 85; 6 *Hill*, 47.)

The irregularity or want of jurisdiction, even in reference to the lands of the Railroad Company is only to be questioned by the company, even although some of the proceedings of the various steps required by law to lay out the road were invalid, so as to acquire no right, in the public to open a road in question, beyond the lands of the relators. The highway, if regularly laid out across the lands of the relators, would be valid as a *cul de sac.* (24 *N. Y. R.*, 559.)

In *Snyder* agt. *Plass*, (28 *N. Y. R.*, 479), Judge JOHNSON, in discussing the effect, where a portion of the road was laid out through an orchard, says: " I do not think the entire order for opening the road would be rendered void by it. The order would still, I think, be valid for the opening of all the other portions of the road."

III. Can the railroad company successfully claim that the public have no right to travel over the reservoir, a short water-course of eighteen feet in length, simply because of the omition of the officers, laying out the highway, to give the company such notices as are required to be given to the owners and occupants of land ?

1. The reservoir is not a fixture or erection for the purpose of trade. It is but a ditch, or short canal, under ground, by which water is conducted. (24 *N. Y. R.*, 559.)

2. The deed, if not void for uncertainty, gives to the company but an easement, or the right to the use of the water, in an artificial channel, which gives no greater right than the right to the flow of water through a natural channel as an ancient stream or water-course.

3. It is settled by the verdict that Lucy L. Crandall was the occupant, and the only person occupying the lands over the reservoir, it being covered with earth and grass, upon which her cattle grazed, when the highway was laid out. The commissioners and referees are only required by stat-

ute to give notice to the occupants, to acqnire jurisdiction. (*Bishop's Highway Law, p.* 38.)

Hence it is claimed that judgment should be awarded, with interest as damages, with costs. (28 *N. N. R.*, 112.)

KENDALL & SANFORD, *for respondents.*

*By the court*, DAVIS, J. The peremptory *mandamus* was denied by the special term, on the ground that "the referees had no jurisdiction to lay out the road in question, over the route adopted by them," because no notice was given to the Erie Railway Company, of the time and place of meeting to decide upon the application, before the determination to lay out the highway was made. The statute provides that before the commissioners shall determine to lay out the highway, they shall cause notice, in writing, to be given *to the occupant of the land* through which the road is to run, of the time and place at which they will meet to decide on such application. They acquire no jurisdiction until they have given such notice. (*The People* agt. *Judges of Herkimer County*, 20 *Wend.*, 186 ; *People* agt. *Robertson*, 17 *How. Pr. R.*, 74.)

It appears by the verdict, that in 1850, William S. Crandall, the ancestor of the relators, conveyed by deed to the New York & Erie R. R. Company (of whom the Erie Railway Company are successors), "a certain spring, or the use of the water of said spring, together with all the land necessary for a reservoir to contain the said water, for the purpose of supplying a water-tank to be erected on said railroad, by said company," with the right of entering on his land whenever necessary to build and keep in order said reservoir and pipes or logs, to conduct said water. In 1851 the company constructed under this grant, a reservoir of rubble masonry, eighteen and one-half feet in diameter, into which water was conducted from said Crandall's lands, and thence was carried in iron pipes, about half a mile

to the tank on the railroad.    This reservoir is within the lines of said highway, as laid out by the referees; the center line of the road passing over the reservoir, three and a fourth links from the outer edge.    The reservoir was constructed under ground (the depth is not given, but it is fair to infer that it was put far enough below the surface to be secure from the action of frosts).    It was and is covered with plank, and frequently has to be opened to clea* it out. For the last three years earth and turf have been on portions of the plank of the same, and the cattle and animals of the relators in the field of about eighteen acres, have and do pass over and upon the same, as on other portions of the field, there being no enclosure around said reservoir.

The jury have also found, that there would be no difficulty in removing and rebuilding said reservoir outside of the highway, nor in bridging the same for traveling purposes.    The assessment of damages to relators does not include the reservoir, but is only for the land around it and along the proposed highway in either direction from it.

There can be no question, I think, but that the Erie Railway Company are the owners of the reservoir and of the land above and beneath it, but the question of ownership is not a material one to the question of jurisdiction.    The statute requires the notice above referred to, to be given to *"the occupant"* and not to "the owner" as such.    By the phrase is meant, I doubt not, *the actual occupant.*    The learned judge before whom the motion was heard in the court below, is very clear in his opinion, that the Railway Company was the occupant within the meaning of the statute.    Their water was in the reservoir and was constantly being supplied and taken away by the pipes which extended several rods outside the limits of the road in *one* direction to several springs, and in the other direction for half a mile to the tanks at the railroad.    They were therefore in the use of the reservoir and of the pipes, and were constructively at least in possession of them.

But the verdict shows that the reservoir was under the surface of the ground, covered in part by earth and turfed over, in an eighteen acre field used by the relators for pasturing their cattle, and that their animals had as free range over and upon the reservoir as the rest of the lot. The relators were actual occupants of the surface of the entire lot, using it precisely as though no reservoir or pipes were beneath its surface. In my judgment, the statute means that kind of occupancy, and not one buried under the surface.

If the highway be laid over a farm, the statute means by occupant the person in possession of the soil, cultivating it for ordinary agricultural purposes, and not one who may be enjoying some beneficial interest beneath the surface, as for instance, the owner of a farm may have a quarry or mine beneath the surface, which he may be carrying on in the bowels of his land without disturbing the surface, while the farm itself may be leased and cultivated by a tenant precisely as though nothing was going on below. In such a case I think the tenant would be the occupant within the true sense of the statute, and not the subteranean worker. If having and using the reservoir of water below the surface, made the Railway Company the occupant of the land above, so the use of the pipes in which the water flowed to and from the reservoir, made the company the occupant of the land above them; and hence it follows, that commissioners of highways must ascertain and notify all persons drawing water in pipes across the line of the proposed road, or their jurisdiction to lay a highway on the surface must fail. Such a rule would be unreasonable and impracticable. It is not a question whether the railway might not have occupied the eighteen and one half feet in diameter above their reservoir and fenced it in, or left it open if they chose, and in such a case have been entitled to notice as occupant nor whether the occupants of the pasture were rightfully occupying the land over the reservoir; but simply one of actual occupancy at the time notice was required to be given. If the company

chose to leave the surface of the reservoir in their use as the rest of the field in which it was situated, it subjected itself to the consequence as to sufficiency of notice, that the statute attaches to any agricultural occupancy. Nor are the rights of the company as owners to be at all prejudiced by this construction. Its reservoir cannot be disturbed till it is compensated, and as owner it is entitled to notice of the proceedings to assess the damages. I think upon the facts found by the jury, the notice given to the agricultural occupant of the land over which the route of the proposed road ran, gave the commissioners and referees jurisdiction to proceed in the case.

A point is made that the reservoir was within the Revised Statutes, as an erection or fixture for the purpose of trade. (1 R. S. Edmonds Ed., 473 § 57.) I think neither the reservoir nor the pipe (and both were, if either) are within the letter or intention of the statute. The laying out of the highway does not interfere with or prejudice the use of the water from the spring. The same artificial channel for conducting it to the tank may be continued. The same mode of passing over it may be adopted as over a natural stream, or open artificial channel. The company being entitled to its compensation if injured to any extent (*the case of The People* agt. *Kingman*, 24 N. Y. 559), is sufficiently analagous to be controlling of this question.

There are, I think, no such merits in this case as to require a strained construction of the statute for the purpose of defeating the relators. It is obvious that the reservoir is no substantial obstacle to the use of the highway. The track for travel can be crossed by it without at all interfering with it or prejudicing the public or the Railway Company. And the reservoir can remain as hundreds of similar constructions do in the much travelled streets of our cities and villages. There is abundance of room to go around without crossing it with the track, but if desirable to pass over it every one knows that a strong covering with a "man

hole" would be all that would be required to protect the company in its enjoyment and give the same free use that the public have over reservoirs in the towns.

I am of opinion that the order should be reversed and a peremptory *mandamus* awarded with costs.

All the judges concurred.