CHARLES J. HULL, PLAINTIFF IN ERROR, V. THE CHICAGO BURLINGTON AND QUINCY RAILROAD COMPANY, HUMPHREY BROTHERS HARDWARE COMPANY, SPENCER A. BROWN, FRANK E. PARISH, AND AUSTIN W. WIER, DEFENDANTS IN ERROR.

1. **Railroads**: POWER OF EMINENT DOMAIN: EJECTMENT: TRESPASS. The remedy given by statute to land-owners for injuries sustained by taking land for railways is exclusive of all other remedies. But this rule does not preclude the land-owner from bringing ejectment for the possession of real estate illegally occupied by a railroad. Where a railroad company without consent of the owner takes and occupies real estate as a part of its right of way without pursuing the statutory method of appraisement and condemnation, and thus making its possession rightful, it is, as all others under like circumstances would be, a trespasser and cannot justify its possession. In such case the usual common law remedies are available to the owner.

2. ———: ———: DEFECTIVE PROCEEDINGS. Where proceedings to condemn real estate, instituted and carried through by a railroad company, are so defective as to be void for want of jurisdiction, such proceeding will afford no defense to an action

of ejectment instituted by the land-owners to recover the possion of the land taken and occupied by the railroad for right of way purposes.

3. ———: ———: CONSTITUTIONAL LAW. The constitutional guaranty that "the property of no person shall be taken or damaged for public use without just compensation therefor" makes it incumbent upon a railroad company, or other governmental agency, exercising the right of eminent domain, to render such compensation before the right to appropriate the property will exist, and in case of failure to agree upon the damages accruing from the taking, the railroad company must proceed to condemn under the forms of law (unless such proceedings are instituted by the land-owner); and in case of failure so to do the possession of the real estate by the company for railroad or other purpose will be illegal, and ejectment may be maintained by the land-owner.

4. ———: ———: WITHDRAWAL OF DEPOSITED CONDEMNATION MONEY. Where a railroad company condemns private property to public use and deposits the condemnation money with the county judge of the proper county, in accordance with law, and takes possession of the condemned land, the subsequent withdrawal of the deposit from the county judge, for the reason that the proceedings were illegal, will be an abandonment of all right to claim the possession of the real estate under such proceedings. COBB, J., dissents.

5. ———: ———: SERVICE BY PUBLICATION. Where, in a proceeding to condemn the right of way through or over the real estate of a non-resident, notice is given by publication in a newspaper, that if the owner fails to apply for an assessment of damages by a date named, then the railroad company will apply therefor, and that the appraisement will be made at the premises on a day and hour named in the notice, such publication will give no authority for the assessment of damages nine months after the day fixed therefor in the notice.

6. ———: ———: ———. Where it is sought to exercise the right of eminent domain in the condemnation of the real estate of a non-resident and notice of such intention is given by publication, the publication must be made in one newspaper four successive weeks. The publication of such notice in a daily newspaper a part of the time and the remainder of the time in a weekly, (the papers being sent to different sets of subscribers in different localities,) will not confer jurisdiction and all proceedings thereunder will be void.

7.  **Limitation of Actions:** REAL ESTATE: POSSESSION. A party in order to acquire title to land by the statute of limitations must not only have a possession adverse to the true owner, but must occupy the same as the owner during the entire statutory period.

8.  ———: ———: EJECTMENT: PROPERTY CONDEMNED BY RAILROAD. In an action in ejectment against a railroad company for real estate occupied by it as a part of its right of way, the company claimed title to the property by reason of the statute of limitations. Within the ten years last preceding the commencement of the action the railroad company sought to condemn the property to its use under the provisions of the statute for the condemnation of real estate. These proceedings were instituted against the real owner by name, and the condemnation money deposited with the county judge for him. It was *Held* that these proceedings amounted to a recognition of the ownership of the person against whom they were instituted, and would arrest the running of the statute, even though the proceedings were void for want of jurisdiction by reason of a failure to comply with the law in the publication of the notice.

ERROR to the district court for Lancaster county. Tried below before HAYWARD, J.

*Lamb, Ricketts & Wilson,* for plaintiffs in error.

*O. P. Mason* and *Marquett & Deweese,* for defendant in error.

REESE, J.

This was an action in ejectment instituted in the district court of Lancaster county for the possession of lots 14, 15, 16, and 17 of block No. 70 of the city of Lincoln. Upon a trial in that court judgment was rendered in favor of plaintiff for the possession of lots 14 and 17 and in favor of defendant for lots 15 and 16. Plaintiff in error, being dissatisfied with the finding of the trial court as to the latter described lots, seeks a review thereon by proceedings in error. The defendant has filed a cross-petition in error,

and seeks a reversal of the judgment in so far as its right to the possession of the former is affected.

It is insisted by defendant in error that ejectment is not the proper remedy, that the remedy given by statute to land owners, for injuries sustained by taking land for railways, is exclusive of all other remedies and not cumulative. This rule seems to be well settled by adjudications. Mills on Eminent Domain, sec. 87, and cases there cited. See also *R. R. Co. v. Fink*, 18 Neb., 88. But if the theory of plaintiff in error is the correct one, that all the proceedings to condemn the real estate in question were void, and defendant acquired no rights thereunder, then it seems to us that the rule as to the statutory remedy being exclusive would not be applicable here, for the action is not one for injuries sustained by taking the land, but for the land itself. Stated differently, the contention on the part of plaintiff in error is that the whole proceeding to condemn the property is a nullity, and that defendant in error is a trespasser from the beginning. If this is true the action in ejectment is the proper remedy.

In *R. R. Co. v. Fink, supra*, the present Chief Justice, MAXWELL, in writing the opinion of the court, says: "The law does not require the citizen to institute proceedings to protect his rights, but merely permits him to do so. Constitutional guarantees of the rights of property would be of little value if the corporation could seize the property of an individual, and say to the owner, 'If you want compensation for this property institute proceedings to condemn it, and after we think the proper amount is awarded we will pay you.'" While the manner of ascertaining the damages is exclusive, yet if a railroad company takes and occupies real estate without taking the necessary legal steps to condemn the land and thus making its possession rightful, it is, as all others under like circumstances, a trespasser, and cannot justify its possession. Therefore the usual common law remedies are available to the owner. *R. R. Co. v.*

*Menk,* 4 Neb., 24. *Blaisdell v. Winthrop,* 118 Mass., 138. *Ewing v. St. Louis,* 5 Wall., 413. The owner may enjoin the entry. *R. R. v. Menk, supra. Ray v. R. R.,* Id., 439. *Cameron v. Supervisors,* 47 Miss., 264. *Paris v. Mason,* 37 Texas, 447. *Floyd v. Turner,* 23 Id., 292. *Pierpoint v. Harrisville,* 9 W. Va., 215. Or he may bring ejectment. *R. R. Co. v. Smith,* 78 Ill., 96. *Smith v. R. R.,* 67 Id., 191. *R. R. v. President of Knox College,* 34 Id., 195.

Where ejectment is brought, the pendency of proceedings to condemn will be no defense to the action. *Coburn v. Lumber Co.,* 46 Cal., 31. And for stronger reasons it would follow that if the proceeding to condemn had been completed, and was so defective as to be void for want of jurisdiction or for other cause, the same rule would apply, and such void proceeding would furnish no defense.

This question being presented by the record and being as we think, of vital importance to the case, we will consider it as next in order.

The answer of defendant in error consists of four separate defenses, which may be stated as follows:

*First.* A general denial.

*Second.* That on the 12th day of December, 1879, and long prior thereto, the Burlington and Missouri River Railroad Company in Nebraska was a corporation under the laws of the state, and had built and operated a railroad in said name from Plattsmouth through the counties of Cass, Saunders, and Lancaster, through the city of Lincoln, and thence westward to Kearney. That at said date the business of said company required said lots 14, 15, 16, and 17, in block 70, for the use and operation of its railroad. That said company, in pursuance of the statutes, made application on the 12th day of December, 1879, by filing an application and petition for the condemnation of said lots to the use of said company. A transcript of all the proceedings of condemnation, showing the deposit of the con-

demnation money with the county judge, is attached to the answer. It is alleged that the money, amounting to one thousand dollars, being deposited, the said railroad company being in possession of the property, the same was occupied by it, and its successor, the Chicago, Burlington and Quincy Railroad Company, to the present time. That no appeal or writ of error to reverse or modify the proceedings, had ever been had, and they were wholly unreversed, unmodified, and in full force, and by which defendant had the right to use and occupy the lots, and could not be ejected therefrom.

*Third.* That plaintiff's cause of action did not accrue within ten years next immediately preceding the commencement of this action and is barred by the statute of limitations.

*Fourth.* That in July, 1874, the Nebraska Railway Company, a corporation under the laws of Nebraska, and operating a road from Nebraska City through the city of Lincoln to Seward, took possession of said lots, and in the fall of 1874 took open, notorious, and public possession of said lots, laid side tracks across and over them, and said company from that time to the present, together with its legal successors, has continued in open, public, notorious, and exclusive use and occupancy of said lots for more than ten years next prior to the commencement of this suit; that the Nebraska Railway Company was legally leased to the Burlington and Missouri River Railroad Company, and said lots were used and occupied with station-house, coal-house, side tracks, and in the open, public, notorious and exclusive possession of said Burlington and Missouri River Railroad Company by virtue of said lease. That afterward said last-named company consolidated all its lines of road in Nebraska with the company known as the Chicago, Burlington, and Quincy Railroad Company, and said company has continued in the constant, continuous, notorious, public, and exclusive possession of said lots,

and has by its predecessor aforesaid and by itself, occupied the said lots, and been in the public, open, notorious and exclusive use of all of said lots and duly using and occupying the same, with its station-house, coal-house, side tracks, and turnouts for more than ten years next prior to the commencement of this suit, and during all of said time said defendant and its legal predecessors have occupied the same and claimed title thereto, which claim was never questioned until the bringing of this suit.

The answers of the defendants, Humphrey Bros., and of S. A. Brown and Company, each consisted of general denials.

Plaintiff filed his reply to the answer of the defendant railroad company, which consisted of a general denial except as to matters expressly admitted and a specific denial that on the 12th day of December, 1879, or at any other time the Burlington and Missouri River Railroad Company filed any application for the condemnation of the property in question. Alleges that the condemnation proceedings described and set out in defendant's answer are void because the county judge had no jurisdiction over the property and never had jurisdiction to appoint appraisers. That the appraisers had no power to assess damages for taking the property. That no notice was given or served upon the plaintiff as required by law to give said court jurisdiction.

It is alleged that the notice was never published four weeks in any newspaper, but that the same was published in the daily *State Journal* January 24, 1880, and in the weekly *State Journal* January 30, February 6 and 13, and at no other times; that the daily *State Journal* and weekly *State Journal* at said time were wholly different newspapers, with different subscribers, and circulated in different communities.

It is denied that the Chicago, Burlington, and Quincy Railroad Company and the Burlington and Missouri River

Railroad Company ever needed said property, or that they have used or occupied it for railroad purposes, but have leased it to private individuals who use the same for wholly private purposes in no way connected with the business of said companies as common carriers.

It is alleged that whatever possession the said Nebraska Railway Company ever had of the property in question was under and by virtue of certain pretended condemnation proceedings which expressly recognized the title and ownership of plaintiff. That in 1879, or prior thereto, the Nebraska Railway Company surrendered whatever possession it had theretofore had of said property and abandoned the use and occupation thereof. That the B. & M. R. R. Co., the successor of said Nebraska Railway Company, withdrew from the county judge the money deposited by the said Nebraska Railway Company as damages assessed under said pretended condemnation proceedings taken by said Nebraska Railway Company and abandoned all right, title, and interest in said property derived through and under said pretended condemnation. Denies that said Nebraska Railway Company ever occupied said lots under claim of title thereto. Denies that the B. & M. R. R. Co. received possession of said lots from the Nebraska Railway Company, but alleges that the B. & M. R. R. Company expressly recognized the title and ownership of the plaintiff by its proceedings to condemn, set forth in answer that the B. & M. R. R., in 1880, by their lessees took possession of said lots and have ever since held the same by virtue of the pretended condemnation proceeding in said amended answer set forth.

Plaintiff also filed his motion for an order to compel defendant to elect whether it would stand upon the second or fourth defense contained in its answer for the reason that these defenses were inconsistent and could not be joined. This motion was overruled and plaintiff now assigns this ruling for error. As we view this case the question here

presented is not material to its determination. But we deem it proper to say that upon consultation we were unanimously of the opinion that the defenses were not inconsistent, and that in the ruling on plaintiffs' motion there was no error. The cause was tried to the court without the intervention of the jury, with the result above stated.

The following facts were found by the court specially:

"1st. That the title of the premises described in plaintiff's petition, to-wit: Lots 14, 15, 16, and 17, in block 70, passed by patent and mesne conveyances from the United States to the state of Nebraska, and then by deeds dated the 10th day of Nov., 1868, and the 9th day of July, 1868, the title in fee to the same vested in the plaintiff herein. .

"2d. That in May and June, 1875, the Nebraska Railway Company entered upon said lots 15 and 16, and laid thereon a road bed and a side track or switch, and at the same time laid their main track along the west side of said lots, as shown by the map introduced in evidence, the same being the tracks next east and west of the building designated as Humphrey's warehouse, and said company or its successors have ever since used such tracks.

"3d. That about December, 1875, the said Nebraska Railway Company moved its depot on to lot number 15 as described in plaintiff's petition.

"4th. That about November 4th, 1875, the Nebraska Railway Company filed a petition in the county court of Lancaster Co., to condemn the property described in plaintiff's petition, and that thereafter appraisers were called and report made, and on May 5th, 1876, $668.55 were deposited with the then county judge as damages awarded to the plaintiff for the taking of the said property. In such proceeding the county court acquired and had jurisdiction of the subject matter.

"5th. That on March 6th, 1880, the Burlington and Missouri River Railroad Company in Nebraska, the successor of the Nebraska Railway Company, withdrew the

money theretofore deposited by the said Nebraska Railway Company as damages of the alleged ground.

"6th. That about 1877, the Nebraska Railway Company leased its road and right of way to the said Burlington & Missouri River Railroad Company in Nebraska.

"7th. That said depot building was, about 1879, by the Burlington & Missouri River Railroad Company, leased to the defendants Humphrey Bros., for the period of five years at the annual rent of $150, and that said lessees have ever since held possession thereof under said lease.

"8th. That on the 12th day of December, 1879, the Burlington & Missouri River Railroad Company in Nebraska filed with the county judge of Lancaster county, an application for the appointment of appraisers to condemn certain property for right of way in and about the city of Lincoln, and that the plaintiff's property now in controversy was not described, and his name is not mentioned in said application; that on the third day of April, 1880, appraisers appointed upon said application proceeded to appraise the property in controversy, and their report was duly filed on the 5th day of April, 1880, and that on the 7th day of April $1,000 was deposited with the then county judge as plaintiff's damage for the taking of said property, and on the said 7th day of April, 1880, there was filed in the county court of said county due and regular proofs by affidavit of the publication of the notice to the plaintiff Hull, as set out in the answer herein filed. That such notice, proof of publication, and all such proceedings were regular upon their face.

"9th. That the said notice was in fact published in the daily *State Journal* of dates January 24th and 25th, 1880, and in the weekly *State Journal* of dates January 30th and February 5th and February 13th, 1880, and that the same was not published at any other time or date. Such papers are published at the same office by the same company, but are different and separate papers.

"10th. That no affidavit, or other proof of non-residence of the plaintiff Hull, was made to the county court in either of said condemnation proceedings.

"11th. That in 1881 the Burlington & Missouri River Railroad Company in Nebraska leased lots 14 and 17 to Doolittle & Gordon, to be used for a private lumber yard for the period of five years at a nominal rental.

"12th. That in 1881 the said Railroad Company at the request of said Doolittle & Gordon laid a side track or switch over said lots 14 and 17 as shown by the map put in evidence in this case.

"13th. That thereafter and before the commencement of this suit the said Doolittle & Gordon sold their business and stock to the defendants S. A. Brown & Company, together with their rights under said lease.

"14th. That since 1881 said Doolittle & Gordon and S. A. Brown & Company have had exclusive and entire possession and control of said lots 14 and 17 for the use of their said lumber business, and have fenced and enclosed the same.

"15th. That the plaintiff has never received or accepted any of the moneys deposited with the county judge of Lancaster county, in pursuance of either of the condemnation proceedings.

"16th. The court in this case finds that lots 15 and 16, in block 70, are necessary for the operation of defendants' said railroad, and are being used so far as they are occupied by the tracks, road beds, and grades.

"17th. The court further finds, as to lots 14 and 17 in block 70, that while they are not at the present time being used for railroad purposes, that in anticipation of the increase of business and consequent necessity for a greater amount of ground, the proof shows that they will be necessary in the near future to facilitate the operation of its said road and leased lines concentrated at Lincoln."

By reference to the fifth finding it will be seen that the

condemnation proceedings of 1875 were abandoned by de-
fendant, and the damages which had been paid to the
county judge were withdrawn. This action by the rail-
road company was for the reason that the proceedings
were illegal and irregular, and it is quite clear that no right
of defendant can be based thereon. We quote from the
record a receipt executed for the money withdrawn. It is
as follows:

"LINCOLN, March 6, 1880.

"Received of ex-county judge, A. G. Scott, six hundred
and fifty dollars, being the amount of condemnation as
above set out on lots 14, 15, 16, and 17 of block 70, city
of Lincoln. The said condemnation having been illegal
and irregular, and this company having become the suc-
cessor of the Nebraska Railway, and entitled to this money,
the same is withdrawn.

THE B. & M. R. R. Co. IN NEB.,

By J. W. DEWEESE, Agent."

Since no rights can be claimed under or by virtue of the
condemnation proceedings referred to in the receipt here
set out, we deem it scarcely worth while to notice that part
of the case further, yet another reason might be assigned
why they conferred no right to the possession of the prop-
erty.

It appears that on the 4th day of November, 1875, the
application or petition for the appointment of appraisers
was filed with the county judge. Plaintiff was a non-resi-
dent. A notice was published "to the owners" of the
property in question in the Nebraska *State Journal,* noti-
fying them that the Nebraska Railway Company had
located its depot thereon, and "if the owner or owners of
said lots aforesaid, and each of them, shall not within
thirty days from the 3d day of January, 1875, apply to
the probate judge of Lancaster county, in the state of Ne-
braska, to have the damages assessed in the mode prescribed
by law, the said Nebraska Railway Company will apply

to the probate judge of Lancaster county, in the state of Nebraska, to have the damages assessed in the mode prescribed by law. The said assessment of damages for the said lots on behalf of the said Nebraska Railway Company will take place on the said lots aforesaid at the city of Lincoln, in Lancaster county, Nebraska, on Monday, the 3d day of February, 1876, at 11 o'clock A.M. of said day." No action was taken by plaintiff as the owner of the lots, nor was any taken by defendant until November 4th, 1876, when proof of the publication of the notice was filed with the county judge, and on the 6th day of the same month an order was issued to the sheriff commanding him to summon the appraisers named therein to appraise the damages to the property. The appraisement was made on the 13th day of November of the same year.

Section 100 of chapter 16 of the Compiled Statutes, which was in force at the time referred to, is as follows:

" If, upon the location of said railroad, it shall be found to run through the lands of any non-resident owner, the said corporation may give four weeks' notice to such proprietor, if known, and if not known, by a description of such real estate, by publication four consecutive weeks in some newspaper published in the county where such lands may lie, if there be any, and if not, in one nearest thereto on the line of their said road, that said railroad has been located through his or her lands; and if such owner shall not within thirty days thereafter apply to said probate (county) judge to have the damages assessed in the mode prescribed in the preceding section, said company may proceed as herein set forth to have the damages assessed, subject to the same right of appeal as in case of resident owners ; and upon payment of the damages assessed, to the probate (county) judge of the proper county for such owner, the corporation shall acquire all rights and privileges mentioned in this subdivision."

While it does not seem to be required by the section

above quoted that the notice shall fix the day at which the railroad company will cause the appraisement to be made, yet, as we have seen, the time was fixed in the notice as the third day of February, 1876, at 11 o'clock A.M.   We are unable to see how a notice fixing the third day of February as the time when "the assessment will take place," could confer authority to make the appraisement more than nine months thereafter.   Where a time is fixed for the appraisement, and no action then taken, the land owner would be justified in supposing that all action had been abandoned, and that appraisement would not be made.   If, then, the appraisement might be made months after without further notice, it would have the effect of depriving a non-resident owner of "the same right of appeal as in case of resident owners," which is given by the section above copied.   We think it clear that jurisdiction to make the appraisement under the notice given had been lost, and all proceedings thereunder were void.

We next come to the condemnation proceedings of 1879– 80.   By the 8th and 9th findings of the trial court it appears that a new petition was filed with the county judge seeking the appraisement of property.   Plaintiff being a non-resident, notice was again given by publication.   The essential question as to these proceedings is found in the fact that the notice was "published in the daily *State Journal,* January 24th and 25th, 1880, and in the weekly *State Journal* January 30th, February 5th, and February 13th, 1880, and that the same was not published at any other time nor date.   Such papers are published at the same office by the same company, but are different and separate papers."   See 9th finding of fact.

As we have seen by the section above copied (100), the corporation may give notice to the land owner "by publication four consecutive weeks in some newspaper published in the county" where the real estate sought to be appropriated is situated.   Did the publication referred to

comply with the requirements of the law ?   Clearly not·
As well might the publication have been in four " different
and separate " newspapers as in two.   The fact that the
papers were published by the same publishing company
could have no bearing upon the question.   The testimony
shows that at the time of the publication but few subscribers
took both papers, the daily and weekly.   The daily had
the largest circulation in the city, and the weekly the
largest in the country.   Each had its separate subscription
list and circulation.

It is well settled that in proceedings of this kind, de-
pending upon a compliance with statutory provisions for
their existence and validity, the statute giving the power
to divest an individual of his property, in order that it may
be appropriated to the use of the public, must be strictly
followed in matters affecting jurisdiction.   The right is
given by statute.   The statute must be complied with to·
secure it.   The notice must be given substantially in ac--
cordance with the statutory requirement or the proceedings·
will be void.   *Curran v. Shattuck,* 24 Cal., 427.   *State ex*
*rel. v. Otoe County,* 6 Neb., 129.   *Doody v. Vaughn,* 7 Id.,
28.   *Robinson v. Mathwick,* 5 Id., 252.   *Case v. Thomp-*
*son,* 6 Wend., 634.   *Case v. Myers,* 6 Dana, 330.   *Wood*
*v. Commissioners,* 62 Ills., 391.   *Seifert v. Brooks,* 34 Wis.,
443.   *People v. Kniskern,* 54 N. Y., 52.   *Skinner v. Av-*
*enue Co.,* 57 Ills., 151.   *People v. Supervisors,* 36 How.
Pr., 544.   *Stone v. Boston,* 2 Metc., 220.

The statute requiring the notice to be published in *"some*
*newspaper* published in the county" clearly means that the
whole publication shall be made in *one* paper "four con-
secutive weeks."   This was not done and no jurisdiction
was acquired.   Virtually no notice was given.   The pro-
ceedings constitute no justification.   *R. R. Co. v. Fink,*
*supra.*

The next question presented is as to the statute of lim-
itations.   This point in the case is referred to but not dis-

cussed by defendant in error in its brief. It is true that defendant in error and its predecessors were in possession of a part, if not all, of the property in dispute more than ten years prior to the commencement of this suit. But we cannot see how it can be held that this possession was, during all of the time alluded to, *adverse* to the title or ownership of plaintiff. In the first instance the title and ownership of plaintiff—or some other person unknown, perhaps —was recognized by the condemnation proceedings of 1875. The damages to the owner as found by the appraisers was placed to his credit with the county judge, where it remained until it was withdrawn in 1880. Had it not been for the fact that at that time new proceedings had been instituted against plaintiff by name *as the owner*, it might be that subsequent to that date the possession of defendant would have been adverse. But by that proceeding his title and ownership were directly admitted and recognized, and on the 7th of April, 1880, the condemnation money found due by the appraisers was deposited with the county judge as plaintiff's damages. These acts amount to a clear and definite acknowledgment of plaintiff's ownership of the property, and would arrest the statute of limitations even if it had commenced to run. *Erskine v. North,* 14 Gratt., 60. *Walbrunn v. Ballen,* 68 Mo., 164. Wood on Limitations, 578. *Lovell v. Frost,* 44 Cal., 471. *Dietrick v. Noel,* 42 O. S., 18. *Stump v. Henry,* 6 Md., 201. Tyler on Ejectment and Adverse Enjoyment, 125 and 921. *Koons v. Steele,* 19 Penn. St., 203.

We hold, therefore, that neither the condemnation proceedings nor the statute of limitations, as shown by the evidence on the trial, constituted a defense to plaintiff's action.

Other questions are presented by the record, but as their consideration is not essential to the decision in this case they will not be noticed.

The judgment of the district court so far as it refers to lots 14 and 17 in block 70 is affirmed. So far as it refers

to lots 15 and 16 in block 70 it is reversed, and the cause, as to them, is remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.