NEBRASKA RY. CO., APPELLANT, V. HELEN CULVER ET AL., APPELLEES.

[FILED JULY 1, 1892.]

1. **Statute of Limitations.**  *Held,* That the statute of limitations had not run in favor of the plaintiff.

2. **Res Adjudicata.**  That the question involved had already been determined in the case of *Hull v. C., B. & Q. R. Co.,* 21 Neb., 371; S. C., 24 Id., 740.

. APPEAL from the district court for Lancaster county. Heard below before CHAPMAN, J.

*Chas. E. Magoon,* for appellant, cited: *Deerfield v. Conn. Riv. R. Co.,* 144 Mass., 338; *Mueller·v. Fruen,* 36 Minn., 274; Gould, Waters, sec. 329; Angell, Water-

courses, sec. 203 *et seq.; Washburn,.* Easements, 84; *Haight v. Price,* 21 N. Y., 241; *Prentice v. Geiger,* 74 N. Y., 341; *Vail v. Mix,* 74 Ill., 127; *Coe v. Mfg. Co.,* 35 Conn., 175; *Tootle v. Clifton,* 22 O. St., 247; *Scheuber v. Held,* 47 Wis., 340; *O. & Ind. R. Co. v. Zinn,* 18 O. St., 417; *Barker v. Salmon,* 2 Met. [Mass.], 32; *Brown v. King,* 5 Id., 173; *Ashley v. Ashley,* 4 Gray [Mass.], 197; *James v. R. Co.,* 91 Ill., 554; *Schall v. R. Co.,* 35 Pa. St., 191; *Day v. R. Co.,* 41 O. St., 392; *Gatling v. Lane,* 17 Neb., 83; *Haywood v. Thomas,* Id., 241; *Fitzgerald v. Brewster,* 31 Id., 51; *Valentine v. Mahoney,* 37 Cal., 389; *Samuel v. Dinkins,* 12 Rich. [S. Car.], 172; *Mann v. Rogers,* 35 Cal., 316; *Harbin v. Roberts,* 33 Ga., 45; *Gregg v. Wells,* 10 Ad. & E. [Eng.], 90; *Chapman v. Chapman,* 59 Pa. St., 214; *Crest v. Jack,* 3 Watts [Pa.], 238; *Woods v. Wilson,* 37 Pa. St., 383; *Brooks v. Curtis,* 4 Lans. [N. Y.], 283; *Bourdier v. R. Co.,* 35 La. Ann., 949; *Goodin v. Canal Co.,* 18 O. St., 179; *Kellogg v. Ely,* 15 Id., 64; *State v. Graham,* 21 Neb., 355; Taylor, Landlord & Ten., sec. 180; *Forbes v. Caldwell,* 39 Kan., 19; *Doe v. Reynolds,* 27 Ala., 364; *Jackson v. Haviland,* 13 Johns. [N. Y.], 229; *Smith v. Trabue,* 1 McLean [U. S.], 87; *Smith v. Hornback,* 4 Litt. [Ky.], 232; *Wheeler v. Ryerss,* 4 Hill [N. Y.], 467; *Hopkins v. Calloway,* 7 Cold. [Tenn.], 37; *Oetgen v. Ross,* 47 Ill., 142; *Smith v. Pretty,* 22 Wis., 655; *Cadwallader v. Harris,* 76 Ill., 370; *Magwire v. Labeaume,* 7 Mo. App., 179; *Read v. Allen,* 56 Tex., 180; *Newman v. Bank,* 80 Cal., 371; *Stout v. Tall,* 9 S. W. Rep. [Tex.], 331; *Spotts v. Hanley,* 85 Cal., 155; *Valentine v. Mahoney,* 37 Id., 399; *Calderwood v. Brooks,* 28 Id., 152; *Wheelock v. Warschauer,* 34 Id., 265; *Dutton v. Warschauer,* 21 Id., 620; *Douglas v. Fulda,* 45 Id., 592; *Shay v. McNamara,* 54 Id., 175; *Chant v. Reynolds,* 49 Id., 213; *Richardson v. Pickering,* 41 N. H., 386; *State v. Holloway,* 8 Blackf. [Ind.], 47; *Dodge v. R. Co.,* 20 Neb., 276; *Barker v. Salmon,* 2 Met. [Mass.], 32; *Finlay v.*

Neb. Ry. Co. v. Culver.

*Cook*, 54 Barb. [N. Y.], 9; Tyler,..Eject., 873; *Stettnische v. Lamb*, 18 Neb., 626; *Pullman Car Co. v. M. P. R. Co.*, 115 U. S., 587.

*Lamb, Ricketts & Wilson, contra*, cited: *Powell v. Bagg*, 8 Gray [Mass.], 441; *R. Co. v. Danberg*, 2 Saw. [U. S.], 452; *Hazelton v. Putnam*, 3 Pin. [Wis.], 107; 3 Washburn, R. Prop. [5th Ed.], 144, 315, 362; *McCall v. Neely*, 3 Watts [Pa.], 71; *Wheeler v. Bates*, 21 N. H., 460; *Drew v. Westfield*, 124 Mass., 461; *Slater v. Rawson*, 6 Met. [Mass.], 439; *Smith v. Burtis*, 6 Johns. [N. Y.], 216; *Cooper v. Smith*, 9 S. & R. [Pa.], 26; *Cagle v. Parker*, 2 S. E. Rep. [N. Car.], 76; *Morse v. Copeland*, 2 Gray [Mass.], 302; *Smith v. Miller*, 11 Id., 145; *C. & N. W. R. Co. v. Hoag*, 90 Ill., 349; *Tinkham v. Arnold*, 3 Me., 120; 2 Greenl., Ev., 539; *Edson v. Munsell*, 10 Allen [Mass.], 568; *Parker v. Foote*, 19 Wend. [N. Y.], 309; *Sargent v. Ballard*, 9 Pick. [Mass.], 251; *Daniels v. C. & N. W. R. Co.*, 35 Ia., 129; *Colvin v. Burnet*, 17 Wend. [N. Y.], 564; *Pierre v. Fernald*, 26 Me., 440; *Liford's Case*, 11 Coke [Eng.], 51; *Dewey v. Osborne*, 4 Cow. [N. Y.], 329; *Dunn v. Miller*, 75 Mo., 272; *Read v. Allen*, 56 Tex., 176; *Newman v. Bank*, 80 Cal., 368; *Stout v. Tall*, 9 S. W. Rep. [Tex.], 321; *Spotts v. Hanley*, 24 Pac. Rep. [Cal.], 741; *Reynolds v. Willard*, 22 Id., 261; *Watkins v. Peck*, 13 N. H., 360; *New Orleans v. Shakespeare*, 39 La. Ann., 1033; *Ward v. Parlin*, 30 Neb., 384, and cases cited; *Hoagland v. Lusk*, 33 Neb., 376; *Viele v. Judson*, 82 N. Y., 40; *Earl v. Stevens*, 57 Vt., 478; *Crossmon v. May*, 68 Ind., 244; *Stockman v. Land Co.*, 28 Pac. Rep. [Cal.], 117; *Allen v. Shaw*, 61 N. H., 97; *Taylor v. Ely*, 25 Conn., 250; *Stevens v. Dennett*, 51 N. H., 342; *Patterson v. Hitchcock*, 3 Colo., 536; *Griffith v. Wright*, 6 Id., 250; *Pitcher v. Dove*, 99 Ind., 178; *Monks v. Belden*, 80 Mo., 639; *Bales v. Perry*, 51 Id., 449; *Staton v. Bryant*, 55 Miss., 261; *Wazata v. R. Co.*, 49 N. W. Rep. [Minn.], 205; *Fer-*

*guson v. Millikin,* 42 Mich., 441; *Royce v. Watrous,* 73 N. Y., 597; *Buckingham v. Hanna,* 2 O. St., 551; *Henshaw v. Bissell,* 18 Wall. [U. S.], 255; *Brant v. Coal Co.,* 93 U. S., 326; *Lance's Appeal,* 55 Pa. St., 25; *Odneal v. Sherman,* 14 S. W. Rep. [Tex.], 31; *Lyon v. McDonald,* Id., 261; *Hahn v. Baker Lodge,* 27 Pac. Rep. [Ore.], 167; *Dennis v. Spencer,* 47 N. W. Rep. [Minn.], 795; *Ger. Ins. Co. v. Fairbanks,* 32 Neb., 750; *Mabary v. Dollarhide,* 11 S. W. Rep. [Mo.], 611; *Bruce v. Platt,* 80 N. Y., 379; *Hollingshead v. Woodard,* 107 Id., 96; *Mumma v. Potomac,* 8 Pet. [U. S.], 286; *Dobson v. Simonton,* 86 N. Car., 492; *Phillips v. Wickham,* 1 Paige Ch. [N. Y.], 595; *Briggs v. Penniman,* 8 Cow. [N. Y.], 387; *Gains v. Bank,* 12 Ark., 769; *Christian Soc. v. Proctor,* 27 Ill., 414; *Boyce v. M. E. Church,* 46 Md., 359; *Greenwood v. R. Co.,* 10 Gray [Mass.], 373; *M. R. & Ft. S. R. Co. v. Shirley,* 20 Kan., 660; *Greeley v. Smith,* 3 Story [U. S.], 657; *Natl. Bank v. Colby,* 21 Wall. [U. S.], 615; *Alexandria v. Fairfax,* 95 U. S., 774; *Strickland v. Prichard,* 37 Vt., 324; *Mfg. Co. v. Marsh,* 1 Cush. [Mass.], 507; *Mahone v. R. Co.,* 111 Mass., 75; *President M. & M. Co. v. Coquard,* 40 Mo. App., 40.

Maxwell, Ch. J.

On the 30th day of September, 1885, Charles J. Hull commenced an action in ejectment in the district court of Lancaster county against the Chicago, Burlington & Quincy Railroad Company, Humphrey Bros. Hardware Company, and S. A. Brown & Co. to recover possession of lots 14, 15, 16, and 17 in block 70 of Lincoln. April 15, 1886, the defendant railroad company filed an amended answer, presenting the following defenses:

First—General denial.

Second—Condemnation proceedings by the Burlington & Missouri River Railroad Company in December, 1879.

Third—Ten-year statute of limitations.

Fourth—That the Chicago, Burlington & Quincy Railroad Company with its predecessors, the Burlington & Missouri River Railroad Company and the Nebraska Railway Company, had been in open, notorious, and exclusive possession of said lots since July, 1874.

All the allegations of this answer were put in issue by the reply. A trial to the court, a jury having been waived, resulted in a judgment for plaintiff Hull as to lots 14 and 17, and for the defendant railroad company as to lots 15 and 16. The case was then brought to this court by Hull upon error, both parties filing petitions in error. Upon a hearing in this court the judgment of the court below was affirmed so far as it was in favor of Hull and reversed so far as it was against him. The opinion in that case is reported in *Hull v. C., B. & Q. R. Co.*, 21 Neb., 371. The case went back to the district court, and upon leave the defendant railroad company filed another amended answer, in which the following defenses were interposed:

First—General denial.

Second—That the Nebraska Railway Company in 1874 took open, notorious, and public possession of said lots, and condemned them as required by law, and by itself and its lessees, the Burlington & Missouri River Railroad Company in Nebraska and the Chicago Burlington & Quincy Railroad Company, had continuous, open, notorious, public, and exclusive possession for more than ten years; that the plaintiff had actual knowledge of the possession, use, and occupancy of the lots by the three companies named, and that plaintiff by his knowledge and silence was estopped to assert his title.

Third—That the Nebraska Railway Company is a necessary party to the action.

Fourth—Ten years statute of limitation.

This answer having been put in issue by a reply, a trial was had on the 14th day of September, 1887, resulting in a judgment for the plaintiff Hull as to lots 15 and 16.

The defendant company prosecuted a proceeding in error to this court to reverse this judgment, which proceeding resulted in affirming the judgment of the court below. This second opinion is found in *C., B. & Q. R. Co. v. Hull*, 24 Neb., 740. On the 15th day of October, 1887, by virtue of a writ of restitution, the sheriff put the plaintiff Hull into possession of lots 14 and 17, and on the same day Hull leased these lots to S. A. Brown & Co., and on the 23d day of February, 1888, Hull's title to lots 15 and 16 having been affirmed by this court, he leased those lots to Humphrey Bros. Hardware Company. On November 1, 1887, the plaintiff herein filed its petition in this case and procured from Judge Field a temporary injunction restraining said Hull from prosecuting the ejectment case heretofore mentioned, and in said petition asked to have the title to said lots quieted in the plaintiff, on the grounds that plaintiff had acquired title by adverse possession, and that Hull was estopped by his conduct from asserting his title. To this petition the defendant Hull filed an answer, setting up the following defenses:

First—Denying the existence of the plaintiff.

Second—That an action to quiet title would not lie, because defendant was in possession of the property.

Third—That the plaintiff, by its general attorney, appeared in the ejectment suit and pleaded the title of plaintiff and procured an adjudication thereof.

Fourth—That the pretended condemnation proceedings taken by the plaintiff in 1876 were void.

Fifth—That by commencing the condemnation proceedings of 1876 the plaintiff recognized the title of defendant and could not claim adversely thereto.

Sixth—That the condemnation money deposited by the plaintiff had been withdrawn.

Seventh—That in 1877 these lots were wholly abandoned for railroad purposes and reverted to the defendant.

Charles J. Hull having died on the 12th of February,

1889, this cause was, on the 1st day of April, 1889, revived in the name of Helen Culver, sole devisee under the will.    Plaintiff replied by a general denial, and the cause coming on for trial to the court on the 6th day of December, 1889, a decree was rendered dismissing the plaintiff's bill, whereupon the case was brought to this court on appeal.

The testimony shows that in the year 1875 the Midland Pacific railway located its line over a portion of these lots. Afterwards, in the same year, the Midland company was consolidated with the Brownville, Fort Kearney & Pacific Railway Company.    The new corporation was called the Nebraska Railway Company.    In December, 1875, the Nebraska Railway Company attempted to condemn the lots in controversy and deposited the amount at which they were appraised with the county judge of Lancaster county. This deposit was withdrawn in the year 1880.    In June, 1877, the Nebraska Railway Company leased its line of road to the Burlington & Missouri River Railroad Company for the term of 999 years.    The terms of the lease would indicate that it was practically a conveyance.    The lease is as follows :

"It is agreed by and between the Burlington & Missouri River Railroad Company in Nebraska, of the one part, and the Nebraska Railway Company, of the other part:

"First—That the Nebraska Railway Company shall lease and demise, and it does hereby lease and demise, to the Burlington & Missouri River Railroad Company in Nebraska all of its railroad, depot grounds, depots, franchises, and property in use or connected with or that hereafter may be acquired for the use of said railroad, but excluding all land received from the state of Nebraska or other sources, except right of way, or depot grounds used, or to be used for the operation of its road, to have and to hold for the period of 999 years from the date hereof.

"Second—The Burlington & Missouri River Railroad

Company in Nebraska agrees to pay as and by way of rent, in the manner hereinafter stated, the earnings of said road after deducting what in the judgment of said company shall be the necessary expenses for the operation of the same, and for placing and keeping the same in good running order, and all taxes; that is to say, the said net earnings are to be first applied by the said Burlington & Missouri River Railroad Company in Nebraska to the payment, first, of interest, and, next, of the principal of the first mortgage bonds which have been issued on said railroad from Brownville to the city of Seward, in Seward county, Nebraska, at the rate of $20,000 per mile of road, bearing interest at the rate of seven per cent per annum, free of United States tax, and, second, the residue to be paid over to the lessors.

"In witness whereof, the said parties have caused their corporate seals to be hereunto affixed, and the same to be subscribed by their respective presidents, on this 5th day of June, A. D. 1877.

"[SEAL.]          NEBRASKA RAILWAY COMPANY,
                    "By B. G. SMITH, *President.*

" Attest:
          " CHAS. D. SMITH, *Secretary.*

"[SEAL.]          THE BURLINGTON & MISSOURI RIVER
                    RAILROAD COMPANY IN NEBRASKA,
                    " By GEORGE TYSON, *President.*

Attest:
          " J. W. DENNISON, *Secretary.*"

The principal contention of the plaintiff is that it has acquired title by adverse possession. We think differently, however. The proof clearly shows that it recognized the title of Hull in attempting to condemn his property and the deposit of the money with the county judge. This money, had the condemnation been legal, represented the land condemned.

It is claimed on behalf of the plaintiff that the money

was withdrawn without its knowledge or consent; whether so or not is not material in this case. The money remained as the purchase price of the land, and was withdrawn by the beneficiary under the lease, and an attempt made to recondemn the land in question. It is very clear, there- fore, that the plaintiff was not in possession adversely for more than ten years prior to the time that Hull instituted the action in ejectment. We do not decide that the statute of limitations will or will not run in favor of a railway company, as the question does not arise. In addition to this, these questions were fully adjudicated in *Hull v. C., B. & Q. R. Co.*, 21 Neb., 371. In the opinion in that case Judge REESE very fully states the reasons why the railway should not recover, as follows: The statute requir- ing the notice to be published in "some newspaper pub- lished in the county" clearly means that the whole publi- cation shall be made in one paper " four consecutive weeks." This was not done, and no jurisdiction was acquired. Virtually no notice was given. The proceedings constitute no justification. (*R. Co. v. Fink, supra.*)

The next question presented is as to the statute of limi- tations. This point in the case is referred to but not dis- cussed by defendant in error in its brief. It is true that defendant in error and its predecessors were in possession of a part, if not all, of the property in dispute more than ten years prior to the commencement of this suit. But we cannot see how it can be held that this possession was, during all of the time alluded to, adverse to the title or ownership of plaintiff. In the first instance the title and ownership of plaintiff, or some other person unknown, perhaps, was recognized by the condemnation proceedings of 1875. The damage to the owner as found by the appraisers was placed to his credit with the county judge, where it remained until it was withdrawn in 1880. Had it not been for the fact at that time new pro- ceedings had been instituted against plaintiff by name

as the owner, it might be that subsequent to that date the possession of defendant would have been adverse. But by that proceeding his title and ownership were directly admitted and recognized, and on the 7th day of April, 1880, the condemnation money found due by the appraisers was deposited with the county judge as plaintiff's damages. These acts amount to a clear and definite acknowledgment of plaintiff's ownership of the property, and would arrest the statute of limitations even if it had commenced to run. (*Erskine v. North,* 14 Gratt. [Va.], 60; *Walbrunn v. Balben,* 68 Mo., 164; Wood on Limitations, 578; *Lovell v. Frost,* 44 Cal., 471; *Dietrick v. Noel,* 42 O. St., 18; *Stump v. Henry,* 6 Md., 201; Tyler on Ejectment and Adverse Enjoyment, 125 and 921; *Koons v. Steele,* 19 Pa. St., 203.) We hold, therefore, that neither the condemnation proceedings, nor the statute of limitations, as shown by the evidence on the trial, constituted a defense to plaintiff's action. This decision was adhered to in the same case in 24 Neb., 740. These decisions settle the rights of the parties, and the attempt to relitigate in this case the question which is already determined should not be encouraged. The decision of the court below is right and is

AFFIRMED.

THE other judges concur.