SIMON OBERNALTE V. JONATHAN EDGAR.

[FILED NOVEMBER 26, 1889.]

1. **Leading Questions:** DISCRETION OF TRIAL COURT. It is in the discretion of the judge presiding at a trial to determine whether a question is objectionable as leading, and a judgment will not be reversed for error in that respect, except in a case where there is an abuse of discretion. (See *Walker v. Dunspaugh*, 20 N. Y., 170.)

2. **Adverse Possession:** OCCUPATION UNDER MISTAKE IS. If one, by mistake, inclose the land of another, and claim it as his own, to certain fixed monuments or boundaries, his actual and uninterrupted possession as owner for the statutory period will work a disseisin and his title will be perfect. (*Levy v. Yerga*, 25 Neb., 764.)

ERROR to the district court for Cass county. Tried below before CHAPMAN, J.

*J. H. Haldeman*, for plaintiff in error:

Leading questions, on direct or redirect examination, are not permissible. (1 Greenleaf, Ev., sec 434; *Smith v. Shoemaker*, 17 Wall. [U. S.], 630.) The evidence shows that the land was occupied through mutual mistake; and in this regard the case differs from *Tex v. Pflug*, 24 Neb., 666; hence the possession was not adverse. (*Alexander v. Wheeler*, 69 Ala., 332; *Howard v. Reedy*, 29 Ga., 152; *Grube v. Wells*, 34

Ia., 148; *Skinner v. Crawford*, 54 Id., 120 ; *Winn v. Abeles,* 35 Kan., 85 ; *Abbott v. Abbott*, 51 Me., 575; *Hitchings v. Morrison*, 72 Id., 331; *Ricker v. Hibbard*, 73 Id., 105; *St. Louis University v. McCune*, 28 Mo., 481; *Thomas v. Babb*, 45 Id., 384 ; Angell on Limitations, sec. 390.)    To be adverse, possession must be hostile. (*Kirk v. Smith*, 9 Wheat. [U. S.], 241; *Turney v. Chamberlain*, 15 Ill., 273; Sedgwick & Waite, Title, sec. 749 ; Tyler, Ejectment, 860.) Failure to submit the question of hostility in an instruction, is error (*Thompson v. Felton*, 54 Cal., 547; *Sparrow v. Hovey*, 44 Mich., 63) ; and is not cured by alluding to the question in another instruction. (*Wasson v. Palmer*, 13 Neb., 376.)

*H. D. Travis, contra:*

The questions complained of as leading were not prejudicial. Possession under a mutual mistake is adverse. (*McKinney v. Kenny*, 1 A. K. Marsh. [Ky.], 460; *Smith v. Morrow*, 5 Litt. [Ky.], 210; *Hunter v. Chrisman*, 6 B. Mon. [Ky.], 463 ; *Tex v. Pflug*, 24 Neb., 666; *Enfield v. Day*, 7 N. H., 457; *Hale v. Glidden*, 10 Id., 397; *Crary v. Goodman*, 22 N. Y., 170; *Yetzer v. Thoman*, 17 Ohio St., 130.) Moreover, neither Obernalte nor his grantors occupied the land under mistake.

COBB, J.

This proceeding in ejectment is brought on error from the district court of Cass county.

The plaintiff alleged in the court below that he has a legal estate in and is entitled to the immediate possession of a piece, or strip, of land off the south side of the southeast quarter of section 19, township 11, range 11, in said county, being about seventy-three links wide at the west end of said strip, and running from thence east, angling to a point at the southeast corner stone of said section, and

containing about one and one-half acres; that the defendant unlawfully keeps him out of the possession thereof, and prays judgment of possession, etc.

The amended answer of the defendant denies each and every allegation of the plaintiff.

II. That he has open, notorious, exclusive, continuous, and peaceable possession for more than ten years next preceding the commencement of this suit, and is the owner in fee simple of the land described.

III. That the highway running east and west between the lands of plaintiff and the southeast quarter of section 19, township 11, range 11 east of the 6th P. M., in said county, and the lands of Jonathan Edgar on the south have been used by all parties owning and controlling said lands, and the owners of adjoining lands, for the last eighteen years, immediately preceding the commencement of this suit, as the true line and boundary between the lands of plaintiff and defendant, and that the plaintiff is thereby estopped to claim the lands described, etc.

There was a trial to a jury, with a verdict for the defendant. The plaintiff's motion for a new trial being overruled, judgment was entered on the verdict for defendant's costs, and the plaintiff's bill of exceptions was allowed and settled on the following assignments of error:

1. The court erred in permitting the defendant and Beach and Allen to testify over objection of plaintiff in relation to the boundary lines of sections 19 and 20, in township 11, range 11, in said county, and the boundary and location of the strip in controversy and the improvements supposed to be put thereon, said witnesses not having shown themselves competent to so testify.

2. In permitting leading questions to be put and answered by defendant and Beach and Allen, clearly suggesting the answer on material points.

3. In giving on his motion instructions to the jury numbered 1, 2, 3, 4, and 5.

4. [ ᵢ giving instruction 7, asked by the defendant.

5. In refusing to give instructions 1, 2, 3, 4, 5, 6, 7, 8, and 9, asked by the plaintiff.

6. The verdict is not sustained by sufficient evidence and is contrary to law and the evidence adduced.

7. In overruling the motion for a new trial.

The first error relied on, and argued in the brief of the plaintiff in error, is that defendant, and other witnesses called by him, when on the stand in the court below, were permitted by the court, over the objection of the plaintiff, to answer leading questions put to them by defendant's counsel.

As above stated, the defendant had pleaded in answer, amongst other matters of defense, "that he has had open, notorious, exclusive, continuous, and peaceable possession of the land in controversy for more than ten years next preceding the commencement of the suit." The defendant, Jonathan Edgar, having testified that he was the defendant in said cause; that he lived on section 30 until quite recently, but then lived at Wabash; that he went onto that part of said section and took it up as a homestead in 1869; that he went onto it in 1870, and had occupied it ever since, his examination was continued as follows:

Q. What, if any, improvements have you made, and what have you done on the strip of land in controversy in this case?

Over objection he answered:

"In the spring of 1870, I broke out my hedge rows, and in the spring of 1871 I put out my trees."

Q. State where you put them.

A. Right along the north line of section 30.

Q. What quarter of the section?

(Over objection.) A. The northeast part of that section.

Q. How much land did you own in that part of the section?

A. Forty acres.

Q. You are sure that is on the land which Mr. Obernalte claims from you, are you?

A. Yes, sir.

Q. Have you stated all of the improvements that you have made on that land now?

A. That is all.

Q. Have you ever recognized the plaintiff in this case as having any interest in this land in any manner? (Objected to, as leading, incompetent, and irrelevant. Overruled, with exceptions.)

A. No, sir.

Q. When did he first claim an interest in this land?

A. I think it was about two years ago.

Q. In 1886?

A. Yes, sir.

H. C. Beach, a witness on the part of the defendant, testified: "That he resides on the northwest quarter of section 30, 11, 11; that he homesteaded the north half of said quarter, he thinks in 1867, and has lived there continuously since 1868; that he has known Mr. Edgar, the defendant, ever since he has lived there."

His examination continued as follows.

Q. State, if you know, how long Mr. Edgar has resided there on the northeast quarter of section 30, 11, 11? (Objected to, as incompetent and immaterial. Overruled, with exceptions.)

A. I believe he came there in 1870; about the year 1870 I think it was, and he was living there until this fall, probably two or three months ago, when he moved to Wabash.

Q. Do you know the land in controversy in this suit, described in the petition as a piece or strip of land off of the south side of the southeast quarter of section 19, 11, 11, Cass county, Nebraska, or being about seventy-three links wide at the west end and running from thence east to a point at the southeast corner?

A. Yes, sir.

Q. State, if you know, what, if any, improvements Mr. Edgar made on that land. (Objected to, as incompetent, immaterial, and the witness has not shown himself to be a surveyor. Overruled, with exception.)

A. According to the survey I know he has some improvements there in the way of trees, buildings, and other improvements— general improvements.

Q. According to the survey you say you know; state what you mean. (Objected to, as incompetent, immaterial, and irrelevant. Overruled, with exceptions.)

A. I mean the survey that I have always known.

Q. By the court: What was your knowledge derived from?

A. My knowledge was from the stone that we had there —from the corner stone, and from the road. (The plaintiff moves to strike the answer out. Overruled, and exception taken.)

Q. Go on, and state further about that matter, according to the survey you knew; state what you mean. (Objected to, as immaterial, incompetent, and irrelevant. Overruled, and exception taken.)

A. I did.

Q. State what you know about the boundary line of the northeast quarter of section 30, and the southeast quarter of section 19? (Objected to, as above. Overruled, and exception taken.)

A. In 1869, prior to that, Mr. Smith owned a portion of the land south of me, and we wanted to divide some timber, and consequently we wanted to get a surveyor to settle the dispute of the timber. I owned the north half, and he the south half, and we wanted to get a line surveyed through there, and settle this question, to which the timber belonged, on a certain line; he claimed further north, and I claimed further south.

Q. What do you know about this road, and this boundary line?

A. We got him to survey out our land at that time, and he surveyed it out, and he run to this stone, that is at the northwest corner of this forty across the land that Mr. Edgar owns, and also the quarter corner between sections 19 and 30, he run there to this stone, and he said that that was a government stone at that time, and I recognized it as such ever since. It has a mark on it, a government mark on it.

(The defendant moved to strike out that part of the witness's testimony wherein he describes the government line and stone, the witness not having shown himself competent to testify to the fact. Overruled, exception taken.)

Q. A competent surveyor said it was?

A. Yes, sir; I took A. B. Smith's word for it. * * *

Q. In your testimony you speak of improvements on the southeast quarter of section 19; do you mean to include those improvements north of the road?

A. Yes, sir.

Q. Then this strip of land that is in controversy is south of the road?

A. Yes, sir.

Q And you speak of this as being in section 30? (Objected to, as leading. Overruled; exception.)

A. Yes, sir.

Q. Now, about that road; has that been treated by the parties there as a boundary line between the southeast of 19, and the northeast of 30, or do you know?

A. Yes, sir.

Q. Now, state what you know. (Objected to, as leading, etc. Overruled; exception.)

A. I know that all parties that had anything to do with the land have recognized that corner as the corner in all farming.

B. F. Allen, a witness on the part of the defendant, stated that he resides on section 25, on the southeast quarter 11, 10; that he is acquainted with Mr. Edgar, defend-

ant; has known him probably for thirty years. Thinks that he homesteaded the northeast quarter of section 30, 11, 11, in the winter of 1869, and went onto it in the spring of 1870 to live; that he has been there ever since, until within a few months.

I quote from the bill of exceptions:

Q. He was there the 1st of April, 1887, was he not?

A. Yes, sir.

The foregoing contains the several items of testimony specified under the said assignment. It cannot be denied that in framing some of his questions defendant's counsel approached very near the danger line, but I do not think that there was error, certainly not reversible error, on the part of the trial court in permitting any question objected to to be answered. In deciding whether a given question put to a witness is open to objection, as being leading, or not, much depends upon the nature of the subject of the inquiry. For example, the defendant in the case at bar, when testifying as a witness in his own behalf, having stated that in a certain year he homesteaded a certain quarter section of government land, might properly be asked by his counsel to state whether he built the house and set out the trees upon the tract, and upon a narrow strip of land adjoining that tract, which were admitted by all parties to be there, as a matter of fact, although such question was put in such a form that it might be answered by "yes" or "no."

This was an action of ejectment for a narrow strip of land one-half mile long, seventy-three links wide at one end and running to a point at the other. The plaintiff in his petition charges the defendant with keeping him out of the possession of this strip of land. The defendant in his answer in effect admits this charge and claims that he not only was then in the possession of said land but had been in such possession continuously for a sufficient length of time to give him the title thereto, under the statute. Had

the defendant not alleged in his answer that he was in possession of this strip of land it would have been incumbent on the plaintiff to prove that fact before he could recover, be his title ever so clearly established. But this fact, upon whomsoever the duty of proving it might devolve, must from its very nature have been one of neighborhood notoriety, concerning which there could be comparatively no danger of false testimony. The objections to leading questions put to a party's own witness consists chiefly in the danger of their leading to perjury by means of their informing the witness what the party calling him desires him to testify to. In cases turning on questions of fact, and where such matters of fact are of such a nature as to render perjury possibly successful, the rule of law prohibiting leading questions by the party calling a witness should be strictly enforced. Yet in what cases and under what circumstances leading questions may be allowed to be put to a witness by the party calling him, is a question resting in the sound discretion of the court, and, except where there is an abuse of discretion, cannot be assigned for error. (See *Walker v. Dunspaugh*, 20 N. Y., 170, and *Gunter v. Watson*, 4 Jones L. [N. C.], 455; cited in note to 1 Greenl. Ev., sec. 435.)

The second point of error argued is that the court erred in permitting defendant's witnesses to testify in regard to lines, boundaries, and corner stones, said witnesses not being shown to be surveyors, etc. In answer to this objection it may be said that there was no dispute between the parties as to the true boundary lines, or corners, as they originally existed, or were established and run by the United States surveyors, between the southeast quarter of section 19 and the northeast quarter of section 30. It was the northern boundary line of the defendant's improvements and possessions that was in dispute. This boundary appears to have been marked by a public road. It required no professional skill or mathematical knowledge to qualify

a witness to testify as to the existence of this road, and these improvements, nor to their relative position to each other, nor indeed did it, to testify as to the existence of the corner stones, and the relation thereto of the road, and improvements respectively.

Upon the trial the following instructions were given to the jury by the court upon its own motion :

" 1. The plaintiff in the case brings this action under our Code of Civil Procedure for the recovery of a strip of land, being about seventy-three links wide at the west end of said strip, thence east angling to a point at the southeast corner of section 19, town 11, range 11, in Cass county, containing one and one-half acres in said section, and alleges that he has a legal estate and is entitled to the possession of said strip of land and that defendant unlawfully keeps him out of the possession of the same.  To this petition of plaintiff the defendant answers alleging that he is the owner seized in fee simple of said real estate, also that he has been in the open, notorious, exclusive, continuous, and peaceable possession of said real estate for more than ten years last past before the commencement of this action. Upon this petition and the answer of the defendant issue is joined.   You are instructed that the deeds and proper title evidenced by the records of Cass county which have been introduced in evidence before you are sufficient to vest the title to the southeast quarter of section No. 19, in township 11 north, of range 11, 6th P. M., in Cass county, in Simon Obernalte, the plaintiff, unless you find that some portion thereof has been in the actual, open, continuous adverse possession of the defendant for at least ten years next immediately preceding the commencement of this action.

"2. You are further instructed that the plaintiff's title to a strip of land described in his petition being denied by defendant in his answer, the burden of proof is upon the plaintiff to satisfy the jury by a fair preponderance of the

evidence submitted to you that plaintiff is the owner of and entitled to the possession of said parcel of real estate. It is not sufficient to entitle plaintiff to a verdict in this case that said strip of land is embraced in the title deeds held by him to section nineteen, but he must show, in addition thereto, that he is entitled to the possession of the same, and if you find from the evidence that defendant, Jonathan Edgar, has been in actual, continued, and notorious adverse possession of the real estate in controversy, claiming the same as his own against all persons for the full extent of ten years, with valuable improvements upon the same, this, you are instructed, would constitute him the owner of the same and he, not the plaintiff, would be entitled to the possession of said strip of land.

"3. You are instructed that the burden of proof is upon the defendant to establish his adverse possession of said real estate for said period of ten years.

"4. You are further instructed as a matter of law that adverse possession of real estate in order to vest the title thereof in adverse claimant must be actual, continued, and notorious adverse possession, with claim of the same as his own against all persons for the full extent of ten years; and that if you find from the evidence in this case that the defendant entered upon the land in controversy, planting forest and fruit trees thereon, claiming as his homestead, and erecting buildings thereon, and remaining in possession of said real estate for ten years prior to the commencement of this action by the plaintiff, that such occupancy would constitute that adverse possession under our statute which would vest the right of possession and title to said real estate in defendant, and your verdict, should you so find, should be in favor of the defendant.

"5. The court instructs you that an offer to compromise a suit is no admission of the plaintiff's right."

The following instructions were given at the request of the defendant:

"6. The jury are instructed that the burden of proof is upon the plaintiff to prove that the land in controversy belongs to the southeast quarter of section 19, town 11, range 11 east.

"7. The court instructs the jury that by the laws of this state if a person goes into the possession of real estate under a claim of right, and continues in the open, exclusive, hostile, and uninterrupted possession of the premises in controversy under the claim of ownership for the period of ten years, he will in law be deemed the true owner thereof. That if the real owner of lands permits another to hold possession of the land, claiming it as his own, and to continue such possession openly, publicly, under claim of ownership for a period of ten years or more, such possession will ripen into a title in the possessor and ever after bar the real owner from taking possession, and you are instructed that the actual possession of land may arise in many different ways, and in any of the different ways of improving it which are open and notorious in their character, which show an intention to appropriate to some useful purpose—that is, by enclosing by fence, erecting buildings, planting groves or trees—going to indicate the appropriation of the property of the persons claiming to own it.

" To constitute adverse possession it must further appear that what the defendant did on the land was not with the permission of the owner but was done under a claim of right in himself and recognizing no right in the real owner."

The instructions to the jury asked by the plaintiff and refused are as follows:

" 2. The jury are further instructed that possession and occupation by inadvertence or mistake, without any intention to claim title, is not sufficient to vest the title in the person occupying the land by adverse possession, and although the jury believe from the evidence that the defendant, more than ten years before the commencement of this action, set out or planted trees, or otherwise improved the

6

strip of land in question, this alone does not show adverse possession. To constitute adverse possession it must further appear from the evidence that what the defendant did on the land was not done through inadvertence or mistake, but was done under a claim of right in himself and in hostility to the right and possession of the owner.

" 3. The jury are instructed that the burden of proof is on the defendant to prove adverse possession as explained in these instructions. That adverse possession sufficient to defeat the legal title must be hostile to the legal owner, and so continue uninterruptedly for ten years. It must be open and of such character as to show clearly that the occupant claimed the land during said time as his own, and all of these things must be proved by a preponderance of evidence.

" 4. Intention on the part of the defendant is material and essential and must be shown by a preponderance of the evidence to create a title in the defendant by adverse possession to the land in question, and if the jury believe from the evidence that the defendant took possession of said land inadvertently or by mistake, or with the knowledge and consent of the owner, then they must find for the plaintiff.

" 8. The court instructs the jury that where one person is shown to have legal title to land, and another person is shown to be in possession of the land, if there is no evidence to the contrary, the law presumes that such possession has been with the consent of the owner, and not in hostility to his rights, and if the person in possession sets up a claim to the land by virtue of such possession, the burden of proof is on him to show affirmatively, by a preponderance of the evidence, not only that he has been in possession, but it must further appear, from a preponderance of the evidence, that such possession was commenced and continued in hostility to the true owner and under the claim of right as against him, and these matters must be shown by clear and affirmative proof of such facts as shown, that such possession was

taken and continued in hostility to such owner; they cannot be made out by inference without such proof."

By giving the instructions above copied as given, and refusing to give those above copied as refused, the court decided the principal question of law involved in the case, and decided it in accordance with at least one decision of this court. The point was fully argued in the case of *Tex v. Pflug*, 24 Neb., 666, though not expressly decided. But in the case of *Levy v. Yerga*, 25 Id., 764, it was again presented and expressly decided, following the case of *Yetzer v. Thoman*, 17 O. S., 130.

In the case at bar it is plain from the evidence that at or before the time of the settlement of the defendant upon the northeast quarter of section 30, a stone, which had been placed to mark and designate the northwest corner of said quarter section and the southwest corner of the southeast quarter of section 19, the land of the plaintiff, had by some means been removed to a point about seventy-three links north of its true position; that a neighborhood road was made by travel between the said tracts of land, along and upon the false line as thus designated by the new position of said stone; that the defendant, in improving, setting out forest and fruit trees upon, and cultivating said northeast quarter of section 30, extended the same northward to the said road, doubtless in the belief that said road marked the true northern boundary of his land, and occupied the same by such improvements and cultivation for more than ten years before and up to the time of the commencement of the action. This possession of the defendant contained all the elements necessary to constitute adverse possession under the statute and constituted a defense to the plaintiff's action.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.