OMAHA & FLORENCE LOAN & TRUST CO. v. THOMAS BARRETT.

[FILED MAY 6, 1891.]

1. **Adverse Possession.** A party who has been in the actual, open, notorious, exclusive, adverse possession of real estate for ten years thereby acquires an absolute title to the same.

2. ——: COLOR OF TITLE IS NOT ESSENTIAL to adverse possession. It is the actual, continuous, open, notorious, exclusive, adverse possession that ripens into an absolute title. Payment of taxes by the occupant for a series of years is a strong circumstance, in

connection with others, tending to show the adverse holding and the abandonment of the property by the holder of the title.

3. ———: REVIEW. Upon all the essential facts necessary to show adverse possession there was no conflict in the testimony and adverse possession clearly established, and the instructions could not aid the plaintiff, there being no testimony to sustain them.

ERROR to the district court for Douglas county.   Tried below before HOPEWELL, J.

*Congdon & Hunt*, for plaintiff in error :

Defendant's possession was without claim of right and might have continued indefinitely without tolling the right of entry of the owner in fee. (*Ewing v. Burnet*, 11 Pet., 41; *Skinner v. Crawford*, 54 Ia., 119; *Colvin v. R. V. Land Ass'n*, 23 Neb., 80.)   Being without the necessary intention which makes it adverse, it will be presumed to continue as it began. (*Link v. Doerfer*, 42 Wis., 391.)   To convert such an entry into a hostile holding, there must be notice equivalent to a new entry, for it is a claim of right where none existed before. (*Pepper v. O'Dowd*, 39 Wis., 548 ; *Jackson v. Thomas*, 16 Johns., 293 ; *Griffith v. Smith*, 27 Neb., 47.)   As the entry was without claim of right, how could the mere acquiring of a tax lien upon the premises convert a peaceable holding into a hostile possession? Only when the tax deed was issued, was the owner of the fee chargeable with notice of the fact that his tenant asserted a hostile claim. (*Donohoe v. Veal*, 19 Mo., 331 ; *Floyd v. Mintsey*, 7 Rich. [S. Car.], 181 ; *Hall v. Stevens*, 9 Met., 418 ; *Clark v. McClure*, 10 Gratt. [Va.], 305 ; *Long v. Mast*, 11 Pa. St., 189 ; *Harrison v. Pool*, 16 Ala., 167 ; *Russell v. Davis*, 38 Conn., 562 ; *Bartlett v. Secor*, 56 Wis., 520-9.)

*Lake & Hamilton, contra :*

Payment of taxes by defendant in error, is strong evidence of his intent to hold the lots as his own. (*Payne v.*

*Hutchins,* 49 Vt., 314.) Neither title nor color of title in an occupant is essential to the running of the statute. (*Gatling v. Lane,* 17 Neb., 77, and cases ; *Stettnische v. Lamb,* 18 Id., 619; *French v. Pearce,* 8 Conn., 439 ; *Brown v. M'Kinney,* 9 Watts [Pa.], 565; *Conyer's Admr. v. Kenan,* 4 Ga., 308.)

PER CURIAM.

This is an action to recover the possession of lots 1 and 6 in block 88, and lots 1 and 2 in block 89, in the city of Florence, Douglas county.

The answer is a general denial, and that the plaintiff's cause of action did not accrue within ten years next before the bringing of the action.

The action was brought on the 5th day of November, 1887. On the trial of the cause in the court below, a verdict was rendered in favor of the defendant, and à motion for a new trial having been overruled, judgment was entered on the verdict.

A number of errors are assigned in this court, particularly in regard to instructions given and refused by the court. It is unnecessary to review the instructions, either given or asked on behalf of the plaintiff, as in our view there is no testimony to sustain them.

The defendant was called as a witness in his own behalf and testified as follows:

Q. When did you first take possession of those lots, Mr. Barrett?

A. I bought the place in 1870—I first bought the place in 1870. Those two lots were then enclosed by the man that I bought them from.

Q. Which two, the ones where your house is?

A. Yes, sir, 1 and 2, in block 89.

Q. One and two in 89?

A. Yes, sir.

By a juror: Q. I thought you said your house was on lot 8, in block 89?

A. Yes, sir.

Q. You bought the two lots, 1 and 2?

A. One and two.

Q. Who was the man you bought of?

A. Olsen.

Q. A man named Olsen?

A. Yes, sir.

Q. Were those two lots, included in what you purchased of Olsen, enclosed at the time?

A. At the time, sir.

Q. Those were the two lots in 89?

A. In 89.

Q. Now, when did you first take possession of lots 1 and 6, in 88?

A. In 1875 I went to live there, and I had possession of them but had not bought them at that time.

Q. You had not bought them then?

A. Not at the time.

Q. When did you buy them?

A. I bought them in 1876.

Q. How did you buy them; at what sale?

A. I bought them at county treasurer's sale for taxes.

Q. Well, did you enter upon the occupancy of them— did you continue your occupancy, or not, of the lots?

A. Ever since, sir.

Q. From 1876 down to the present time?

A. Yes, sir.

Q. Are you still in occupation of them?

A. I am still occupying them.

Q. Is there any fence or enclosure around the lots; that is, in block 88—1 and 6 in 88?

A. Now?

Q. Yes, sir.

A. Yes, sir; they are enclosed and worked.

Q. Who enclosed them?

A. I did, sir.

Q. And when, sir?

A. In 1876.

Q. 1876?

A. 1876.

Q. You enclosed them then?

A. Yes, sir.

Q. Has that enclosure been kept up from 1876 to the present time?

A. Except when I was surveying and breaking the land to plant; then I put a wire fence on.

Q. You just changed fences.

A. Yes, sir.

Q. But you have kept it enclosed all the time with one fence and another?

A. Yes, sir.

Q. When did you commence the cultivation of those lots?

A. In 1878.

Q. Before you commenced the cultivation, how did you occupy them—for what purpose?

A. Used it as a pasture for calves and cows.

Q. Did any one else have any occupancy with you, or did you recognize any one else?

A. None whatever, sir.

Q. You claimed to be the owner of those lots?

A. Yes, sir.

Q. How long have you claimed to be the owner of those lots in 88?

A. Since 1876.

Q. Since 1876?

A. Yes, sir.

Q. That is when you purchased at tax sale?

A. Yes, sir.

Q. And the other lots in 89—how long have you claimed the ownership?

A. Well, ever since I bought——

Q. Bought them from Olsen?

A. Yes, sir.

Q. Have the lots—I believe you said the lots where your house is were enclosed when you bought them?

A. Yes, sir.

Q. Have you kept up that enclosure?

A. All the time, sir.

Q. All the time?

A. Yes, sir.

Q. Was there any difference, if so, state what, between your occupancy and control of the lots when this suit was brought, and at any time previous?

A. None, sir.

Q. Now, sir, who has paid the taxes on those lots since 1876?

A. I did, sir.

Q. You have?

A. Yes, sir.

Q. Have you kept the taxes paid up?

A. Altogether, sir.

Q. Here is a receipt, which I offer in evidence, and to which there is no objection, signed by A. C. Althouse, treasurer, and describing those lots in which there is $9.63 it appears was paid; was that issued to you?

A. Yes, sir.

Q. Did you pay those taxes?

A. I did, sir; that is, for the year 1875.

Q. Did you pay them in 1876?

A. Yes, sir.

Q. Here is another signed by A. C. Althouse, dated April 21, 1877, for the taxes of 1876; are you the Thomas Barrett named there?

A. Yes, sir.

Q. Did you pay those taxes for that year?

A. I did, sir.

His testimony further shows that he has continued in the occupancy of said lots as owner thereof, and paid the taxes thereon up to the time of trial.

There is no testimony contradicting this. It is true Mr. Lantry testifies that in the year 1880 he had occasion frequently to pass one of these blocks and that it was not enclosed; also another witness testifies that he was employed by the defendant about that time to erect a fence on one of the blocks, and that it was not enclosed at that time. The defendant and witnesses in his behalf testify that the blocks were enclosed by a willow fence prior to the year 1875 and continued to be so enclosed until about the year 1880, when the defendant testifies that he had the lot broken up and a new fence erected around it. There is no denial of this testimony and the jury could not have found against it and the verdict have been sustained. There was considerable of an effort made to show that the defendant entered into possession of the lots as a tenant and therefore his possession could not be adverse. The cross-examination of the defendant upon this point simply shows that prior to 1875 he did not claim to be the owner, but in that year he purchased the lots at tax sale, and from that time until the present has paid the taxes thereon and has claimed to own the same.

In *Gatling v. Lane*, 17 Neb., 82, it was held "that a person who enters upon the land of another with the intention of occupying the same as his own, and carries that intention into effect by open, notorious, exclusive, adverse possession of the premises for ten years, thereby disseizes the owner, and this is so whether the entry and possession are contrary to the will of the owner or not, if the occupant denies the owner's title and claims the land as his own." That case was followed and approved in *Haywood v. Thomas*, 17 Neb., 237, and *Stettnische v. Lamb*,

18 Id., 625; *Graham v. Flynn*, 21 Id., 232; *Parker v. Starr*, Id., 683; *Gue v. Jones*, 25 Id, 634, and other cases.

The defendant was not only in possession, but paid the taxes on the lots in question. This was good evidence that he claimed the same as his own.

The case of *Peterson v. Townsend*, 30 Neb., 373, is very similar in its facts to that under consideration, and the title of the occupant was sustained. (See also *Levy v. Yerga*, 25 Neb., 764; *Obernalte v. Edgar*, 28 Neb., 70.)

The plaintiff corporation was organized about the year 1885, and afterwards obtained a deed of conveyance of the lots in controversy. The owners had paid none of the taxes, nor borne any of the burdens incident to the ownership of property. They had, so far as appears, in fact abandoned it as far as it is possible to abandon real estate.

Property is said to be abandoned when it is thrown away or its possession voluntarily forsaken by the owner. (*Eads v. Brazerton*, 22 Ark., 499; 1 Am. & Eng. Ency. of Law, 2.) The holders of the paper title refused, or at least neglected, to pay the taxes due on the lots in question, probably regarding them of not sufficient importance to justify the expenditure. The defendant, however, entered into possession and paid the taxes due upon the lots, and such possession has ripened into an absolute title. There is no error in the record, and the judgment is

AFFIRMED.

THE other judges concur.