VICTOR G. LANTRY V. ALFRED F. WOLFF.

FILED OCTOBER 7, 1896.   No. 6803.

1. **Ejectment: EVIDENCE.** A plaintiff in ejectment, to recover, must show a legal estate to the premises for which he sues, but the evidence of this legal estate need not be a perfect legal paper title.

2. **Adverse Possession.** The title to land becomes complete in the adverse occupant when he and his grantors have maintained an actual, continued, notorious, and adverse possession thereof, claiming title to the same against all persons, for ten years.

3. ——: EVIDENCE. It is not essential that the claim of right or title to the land by the adverse occupant should be a valid legal claim in order that the statute may run in his favor. The facts of the continuous possession, its adverse character, and the claim of the occupant to be the owner of the premises are the essential things to vest a title to real estate by occupancy thereof.

4. ——: ——: TACKING POSSESSION. If the adverse possession of the occupant is a continuation of the possession of a prior adverse possessor claiming title, and such occupant claims title from such prior possessor, then the possession of the occupant may be tacked to that of such prior possessor.

5. **Ejectment: EVIDENCE.** A plaintiff in ejectment must recover upon the strength of his own title, but this does not mean that he is required to prove a title as against the whole world; it is sufficient if he prove title good as against the defendant. *Carson v. Dundas,* 39 Neb., 503, followed.

6. **Adverse Possession: EVIDENCE.** Evidence examined, and *held* to sustain the finding of the district court that defendant in error had acquired the legal title to the real estate in controversy by reason of the adverse occupancy thereof under claim of ownership by him and his grantors for ten years prior to the date the plaintiff in error acquired any interest in, or possession of, said premises.

ERROR from the district court of Douglas county. Tried below before DUFFIE, J.

*Charles A. Goss,* for plaintiff in error.

*Curtis & Shields* and *G. W. Shields, contra.*

RAGAN, C.

This is an action in ejectment, brought in the district court of Douglas county by Alfred F. Wolff against Vic-

tor G. Lantry, to recover the possession of "lot 128, in the city of Florence, known as the 'Mormon Grant.'" Wolff had a verdict and judgment, and Lantry brings the judgment here for review.

The only argument relied upon here for a reversal of the judgment is that the finding of the court, to whom the case was tried without a jury, is not supported by sufficient evidence. The evidence in the record shows that on the 7th of April, 1856, the Florence Land Company conveyed the real estate in question to Brigham Young, "trustee, in trust for the Church of Jesus Christ of Latter-Day Saints." On the 14th of October, 1872, the county treasurer of Douglas county executed a treasurer's or tax deed of the lot to Ellen M. Piper. On the 16th of September, 1874, Piper, under and by the name of Wood, conveyed the lot to William Tubb. Tubb resided upon this lot, cultivated it, and paid the taxes upon it until April 30, 1879, claiming title to the same by virtue of his deed from Wood. On the 30th of April, 1879, Tubb died intestate, leaving no heirs in this country. At the time of his death, and for some years before, his stepdaughter, Mrs. Sarah Foster, was residing with him on the property, and on his deathbed he said to her that she should have what he had when he died, and asked her if she would see that his debts were paid. She told him that she would, and he then said, "After they are paid, do what you like with the rest." Mrs. Foster, in pursuance of this, remained in actual possession of the premises after the death of Tubb, claiming to be the owner of them by virtue of the conversation, just quoted, with Tubb during his last sickness, until the 3d of April, 1881, when she sold and conveyed the property to Mary Dunk. Mrs. Dunk and husband occupied the premises until the 25th of January, 1882, when they sold and conveyed them to William Reeves. He remained in occupancy of the premises until the 12th of July, 1884, when he sold and conveyed them to John F. Behm. Behm remained in the occupancy of the premises until the 10th of August, 1885,

when he sold and conveyed them to Mary Mack, and she and her husband occupied the premises and cultivated them until the 9th of September, 1886, when they sold and conveyed them to Wolff, the defendant in error. Wolff took the actual possession of the premises and leased them to one Larsen on the 25th of March, 1887, for two years. To establish his title and right to the possession of the premises, Wolff relied upon the actual, open, notorious, exclusive, and adverse possession thereof by himself and grantors, claiming ownership for more than ten years; and we are of opinion that the evidence just quoted abundantly sustains his claim and justified the finding of the district court.

It is true that a plaintiff in ejectment, to recover, must show a legal estate to the premises for which he sues (Code of Civil Procedure, sec. 626); but the evidence of this legal estate need not be a perfect legal paper title. The title to land becomes complete in an adverse occupant when he and his grantors have maintained an actual, continued, notorious, and adverse possession thereof, claiming title to the same against all persons, for ten years. (*Horbach v. Miller*, 4 Neb., 31; *Parker v. Starr*, 21 Neb., 680; *Hull v. Chicago, B. & Q. R. Co.*, 21 Neb., 371.) In *Tex v. Pflug*, 24 Neb., 666, it was held: "If one by mistake inclose the land of another and claim it as his own to certain fixed monuments or boundaries, his actual and uninterrupted possession for the statutory period will work a disseizin and his title will be perfect." (*Levy v. Yerga*, 25 Neb., 764; *Obernalte v. Edgar*, 28 Neb., 70.) In *Meyer v. City of Lincoln*, 33 Neb., 566, it was held that where a person had been in the actual, exclusive, and uninterrupted possession of a portion of a public street under a claim of right thereto for ten years, the title to such part of the street had vested absolutely in such occupant. (*Lewis v. Baker*, 39 Neb., 637.)

It is not essential that the claim of right or title to the land by the adverse occupant should be a valid legal claim in order that the statute may run in his favor.

The facts of the continuous possession, its adverse character, and the claim of the occupant to be the owner of the premises are the essential things to vest a title to real estate by occupancy thereof. (*Gatling v. Lane*, 17 Neb., 77.) It is quite immaterial, then, whether the statement made by Tubb to Mrs. Foster amounted to a devise or a gift to her of the land in question, and whether by such statements she acquired any valid title whatever to the property. The important facts are that she believed that Tubb had given her the real estate; that she took and remained in possession thereof by virtue of such statements and claimed title to the same as against the world.

In the case at bar the possession of Mrs. Foster to this land should be tacked to that of Tubb, since she came in claiming under Tubb, and her possession of the property was connected with, and was a continuation of, the possession of Tubb. (*Stettnische v. Lamb*, 18 Neb., 619.) And since Tubb took possession of the land on the 16th of September, 1874, and until his death actually occupied, paid taxes upon it, claimed to own, and held possession adverse to all the world, the statute began to run in his favor from the date of his possession; and as Mrs. Foster's possession was with claim of title and adverse, and she claimed title from Tubb, the statute was not interrupted, and it follows that, if Lantry took possession of the real estate in question at the time he claims he did, in 1888, Wolff's title had at that time been perfected by the statute of limitations. Lantry's claim of title is this: In the year 1886 he became interested in the land through "a deal" which he had with a man named John Taylor, president of the Mormon church, and trustee in trust for the Mormon church; that about the close of the year 1886, or early in the year 1887, he made a "deal" with the church through its president, Taylor, or Staynor, its agent, for the property in controversy; that he made a payment upon this property; that in 1887 John Taylor sent him a deed for the property, which he declined to accept because of the manner of its execution; but in

1888 he took possession of this property. At that time, however, Wolff was in possession of the property through his tenant, Larsen, as already stated, but it seems that while the lot was in cultivation and fenced no one was actually living upon it at the time Lantry took possession.

Lantry put in evidence a quitclaim deed to the premises, dated January 27, 1888, made by one John Stalon to one Eldridge, but the evidence does not show that Stalon was ever in possession of the property, or that he ever had any claim or any title to it whatever. On the 28th of June, 1888, Eldridge quitclaimed the property to Lantry, and on the 28th of September, 1892, Wilford Woodruff, "trustee in trust for the Church of Jesus Christ of Latter-Day Saints," executed and delivered a quitclaim deed of the property to Lantry; but the record does not disclose that Young as trustee had ever conveyed to Woodruff as trustee, nor was any attempt made to show that Woodruff had succeeded Brigham Young as trustee of the property. A plaintiff in ejectment must recover, of course, upon the strength of his own title, but this does not mean that the plaintiff is required to prove a title to the real estate as against the whole world. It is sufficient if he prove a title good as against the defendant. (*Carson v. Dundas*, 39 Neb., 503.) We conclude, therefore, that the evidence supports the finding of the district court that prior to the time that Lantry claims to have acquired any interest in this property, or claims to have been in possession thereof, a perfect legal title thereto had vested. in Wolff because of the open, notorious, exclusive, and adverse possession of the property under claim of ownership thereto of Wolff and his grantors for more than ten years. The judgment of the district court is

AFFIRMED.