### R. H. McALLISTER v. JAMES W. BEYMER.

FILED MARCH 17, 1898.   No. 7892.

</div>

<div align="right">54  247<br>60   97</div>

**Title by Adverse Possession.**   Ordinarily, one who has been in the actual, open, exclusive, adverse, and uninterrupted possession of real estate for ten years thereby acquires absolute title to the same.

ERROR from the district court of Hall county.   Tried below before THOMPSON, J.   *Reversed.*

*H. E. Clifford,* for plaintiff in error.

*W. H. Thompson, contra.*

RYAN, C.

The petition in this action was filed in the district court of Hall county August 10, 1892.   The averments of the plaintiff James W. Beymer were that he was the owner, had a legal estate in, and was entitled to the possession of, a certain described fraction of a lot in Grand Island, which possession defendant wrongfully withheld from

plaintiff. These averments were denied by an answer in which the defendant asserted title in himself. Between the fraction of lot 5, block 55, owned by plaintiff and the fraction of the same lot owned by defendant, there was a strip one foot seven and three-eighths inches in width, which extended the entire length of said lot. This strip was the subject-matter of contention and the judgment of the district court was adverse to the defendant.

We have stated as briefly as possible the issues presented and in the discussion of these issues we shall, with like brevity, confine ourselves to a brief review of the theory of the argument of each party. At the commencement of the trial it was stipulated that McAllister's deed called for the northerly 22 by 66 feet of lot 5, in block 55, and that his title was derived from James Cleary. It was also stipulated at that stage of the proceedings that the deed to plaintiff covered the next 22 by 66 feet of said lot, immediately south of, and adjoining, the said 22 feet held by McAllister, and that plaintiff's title thereto was derived from A. S. Patrick. There was evidence amply sufficient to sustain plaintiff's contention that the defendant's brick building occupied a strip one foot seven and one-half inches wide, which, tested by accurate measurements, was a part of the fraction of the lot owned by plaintiff. On the other hand, it was shown by the testimony of James Cleary, O. P. Mullin, and R. C. Glanville that, at least as early as the year 1879, Cleary, the grantor of McAllister, had placed a roof over the entire strip in controversy and, as at least one witness testified, this strip was floored. The above named three witnesses also testified that from 1879 the strip was used for the storage of stoves and other hardware until Cleary conveyed to McAllister. From the date of this conveyance the strip was used by McAllister in the same manner, and for the same purposes that it had been used by his grantor, until 1885 and 1886, when the brick building was being erected by McAllister to replace the wooden building up to that time occupied as a hardware store.

It seems from the evidence that when this erection was begun the roof over the strip in controversy was removed. While it remained in position, however, the end of the strip toward the street was closed by a door leading directly out to the street. The only testimony which seems not in harmony with that of the three witnesses just referred to was the testimony of Chris Ipsen, which was as follows:

Q. You know where the McAllister brick building is now on the northerly part of lot 5, in block 55?

A. Yes, sir.

Q. Do you know when that brick building was built?

A. Yes, sir; in 1879. I built it myself.

Q. Do you remember of the fact of Mr. Cleary using the space between that building and his frame building for iron and other stuff?

A. No, sir; I think Mr. Patrick had bought the building before Cleary commenced to use the space.

Q. How long was that after the building was built before Patrick commenced to use it?

A. Mr. Patrick bought it in 1881, I think.

Q. You may state to the court if you recollect positively that Mr. Cleary didn't use the space in there for stuff immediately after the building was erected.

A. He never used it while I was there.

If this evidence is to prevail as being contradictory of the three witnesses alluded to, it overcomes that testimony as to the use of the strip by Cleary previous to some time in 1881. From that year, even under this theory, we are bound to consider the use of this strip, as testified by Cleary and the other two witnesses, until the erection of the building in 1885 and 1886, since which time the occupation has been as it now is. The petition in this case, however, was not filed until August, 1892, so that before this action was brought more than ten years had elapsed while the strip in controversy was in the open, exclusive, adverse, actual, and uninterrupted possession of the defendant and his grantor. This vested in Mc-

Allister an absolute title. (*Fink v. Dawson*, 52 Neb. 647. See also *Lantry v. Wolff*, 49 Neb. 374, wherein there are numerous citations of authorities which support the conclusion just announced as applied to the facts of this case.) The judgment of the district court is therefore reversed and this cause is remanded for further proceedings not inconsistent with the views above expressed.

REVERSED AND REMANDED.

HARRISON, C. J., not sitting.