OLIVE C. WALKER ET AL., APPELLEES, v. ELLA M. BELL
ET AL., APPELLANTS.

47 N. W. 2d 504

Filed April 19, 1951.    No. 32933.

*William P. Higgins,* for appellants.

*A. F. Alder,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Olive C. Walker, Frances Clark, and Margaret Walker brought this action in the district court for Loup County. The purpose of the action is to quiet in them the title to certain lands located in Loup County. The trial court found generally for the plaintiffs and quieted in them the title thereto. Certain of the defendants thereupon filed a motion for new trial and, from the overruling thereof, have appealed.

The question presented by the appeal is the sufficiency of the proof to establish appellees' ownership of the premises by adverse possession.

The action is properly maintainable by appellees under section 25-21,112, R. R. S. 1943. It is equitable in its nature and therefore considered here de novo. See, Sittler v. Wittstruck, 122 Neb. 452, 240 N. W. 562; Frank v. Smith, 138 Neb. 382, 293 N. W. 329, 134 A. L. R. 458; § 25-1925, R. R. S. 1943. The burden of proof is on appellees. See Ferber v. Hines, 111 Neb. 85, 195 N. W. 889.

Before reviewing the facts we will set forth certain principles which are applicable thereto and controlling of the parties' rights.

"In Nebraska the law is settled that the operation of the statute of limitations is to vest absolute title in the occupant, when he has maintained an actual, continued, notorious, and adverse possession under claim of ownership for the statutory period. (Horbach v. Miller, 4 Neb., 31; Gatling v. Lane, 17 Id., 77.)" Lantry v. Parker, 37 Neb. 353, 55 N. W. 962.

"The title to land becomes complete in the adverse occupant when he and his grantors have maintained an actual, continued, notorious, and adverse possession thereof, claiming title to the same against all persons, for ten years." Lantry v. Wolff, 49 Neb. 374, 68 N. W. 494.

See, also, Conkey v. Knudsen, 135 Neb. 890, 284 N. W. 737; Frank v. Smith supra; Foltz v. Brakhage, 151 Neb. 216, 36 N. W. 2d 768.

"If the adverse possession of the occupant is a continuation of the possession of a prior adverse possessor claiming title, and such occupant claims title from such prior possessor, then the possession of the occupant may be tacked to that of such prior possessor." Lantry v. Wolff, *supra.*

"In determining the rights of an adverse owner, the entry and possession of his tenant, expressly authorized to act, is the entry and possession of such owner." Cassens v. Wisner, 122 Neb. 408, 240 N. W. 526.

"* * * Payment of taxes by the occupant for a series of years is a strong circumstance, in connection with others, tending to show the adverse holding and the abandonment of the property by the holder of the title." Omaha & F. L. & T. Co. v. Barrett, 31 Neb. 803, 48 N. W. 967. See, also, Dredla v. Patz, 78 Neb. 506, 111 N. W. 136; Twohig v. Leamer, 48 Neb. 247, 67 N. W. 152.

"To determine the acts necessary to constitute adverse possession it is sometimes necessary to take into consideration the character of the property and the purposes for which it is suitable." Ferber v. McQuillen, 99 Neb. 280, 156 N. W. 506.

"* * * a continuous adverse possession does not require a continuous occupancy by someone living on the land all of the time; nor is the use and occupation requisite to the perfection of such title necessarily a constant use. Ordinarily the law does not undertake to specify the particular acts of occupation by which alone title by adverse possession may be acquired since the existence and establishment of the continuity must necessarily depend greatly on the circumstances of each case, and the use to which the property is adapted, the actual manner of its use, the circumstances of the occupant, and to some extent his intention must be considered. It is enough, however, that the land be devoted to the ordinary uses of the adverse claimant provided the uses are such as to put the true proprietor on

notice." 2 C. J. S., Adverse Possession, § 125, p. 681. See, also, Lantry v. Parker, *supra;* Cassens v. Wisner, *supra;* Twohig v. Leamer, *supra.*

The lands involved are described as follows: Northeast quarter of the northeast quarter, west half of northeast quarter, south half of northwest quarter, east half of southwest quarter, and northwest quarter of southeast quarter of Section 8, Township 21 North, Range 20 West of the 6th P. M. in Loup County, Nebraska.

The top soil on these lands, consisting of 320 acres, is of a sandy nature and best suited for pasture, although 30 acres thereof has been broken and put into crops. The improvements thereon consisted of a sod house, a little frame barn, a granary, a windmill, and a water tank. The land was fenced and cross-fenced.

The taxes assessed and levied against these lands for the years 1929 and 1930 became delinquent and remained unpaid. On November 2, 1931, Harry J. Coffin bought two tax sale certificates covering these taxes. As such certificate holder he also paid the taxes subsequently assessed and levied thereon for the years 1931, 1932, and 1933 when the same became delinquent. He began a foreclosure of these certificates and the taxes subsequently paid. However, he dismissed such action and proceeded to obtain a treasurer's deed. He made application therefor to the county treasurer of Loup County. There is evidence that on March 18, 1936, a deed thereto was issued and executed by said county treasurer and left with the county clerk for recording. Whether there is sufficient evidence upon which to base a finding that such instrument was actually executed and delivered to Coffin by the county treasurer and by him, or his attorney, left with the county clerk of Loup County for recording and lost before it was actually recorded we need not decide. Suffice it to say that Coffin's subsequent entering into possession of the premises by a tenant was made under the impression that he had a tax title thereto.

Coffin leased these premises to Ralph Nelson for the period from March 1, 1936, to March 1, 1937. Nelson moved onto the premises and took possession thereof in the fall of 1935. He lived thereon until sometime in March 1937. He paid the rent to Coffin. Coffin paid the taxes assessed and levied upon these lands for the year 1936.

Coffin leased these premises to Ray Nelson for the period from March 1, 1937, to March 1, 1938. Nelson moved onto the premises and took possession thereof in the spring of 1937 after Ralph Nelson had moved off. He stayed thereon during the period of his lease. He paid the rent to Coffin. Coffin paid the taxes assessed and levied on these lands for the year 1937.

Coffin next leased these premises to James McCarthy. McCarthy rented these lands for the years of 1938, 1939, 1940, 1941, 1942, and 1943. He moved onto the premises in the spring of 1938 after Ray Nelson had moved off. He lived thereon until April 1, 1944, when he moved off. He paid the rent to Coffin. Coffin paid the taxes assessed and levied on these premises for the years 1938, 1939, 1940, 1941, and 1942. No one has paid the taxes assessed and levied thereon for the year 1943.

On February 22, 1944, Coffin sold these lands to Robert Rusho for $3 an acre or $960. Of this amount $500 was paid at the time of the sale and the balance was to be paid when Coffin perfected his title and deeded the lands to Rusho. Consequently no deed was given thereto. However, Rusho went into possession under this contract. The balance of the purchase price has never been paid nor were the lands ever deeded by Coffin to Rusho.

Rusho owned other lands adjoining this tract. He put these lands in with his pasture. He had a tenant on his other lands. After he put these lands in with his other lands he leased all of it to his tenant who paid rent for the use thereof. Rusho paid the taxes assessed and levied on these lands for the years 1944 and 1945

except that the taxes on the southeast quarter of the southwest quarter thereof for the year 1944 were paid by J. M. Hyde.

Rusho sold the southeast quarter of the southwest quarter of this tract to J. M. Hyde. Just when this sale was made is not too clearly shown by the record. Hyde paid the taxes assessed and levied on this 40-acre tract for the years 1944, 1946, 1947, 1948, and 1949. The purchase price was $160 but no part of this amount was paid. It is to be paid whenever Rusho delivers a deed thereto to Hyde. Rusho did not deliver his deed to Hyde as he was waiting for Coffin to perfect his title and deed the premises to him. Hyde, however, went into possession of this 40-acre tract by putting it in with his land which is adjoining.

Rusho sold the remaining 280 acres of these lands to Leonard Fowler. This was in October 1945. He sold Fowler a 1,000-acre tract of which the 280 acres was a part. Fowler made a down payment on the purchase price and went into possession of the entire tract. He has been in possession thereof ever since, using the 280 acres as pasture. Rusho did not deliver a deed to the premises to Fowler. He put his deed in escrow, delivery of which was to be made when Coffin perfected his title and deeded the lands to him. Fowler has paid the taxes assessed and levied on these 280 acres for the years 1946, 1947, 1948, and 1949.

The record shows that after 1935, and up until this action was brought, none of the appellants have ever made a claim to these premises or any part therof.

Coffin died on February 26, 1946. At the time of his death he had not perfected his title to these lands nor had he deeded them to Rusho. Rusho still owes the balance of the purchase price. This action is by the appellees, who are the only heirs of Coffin. They are bringing it for the purpose of perfecting title so they can carry out the contract Coffin made with Rusho. The record, viewed in the light of the principles herein-

before set forth, is sufficient to sustain appellees' claim of ownership by reason of an adverse holding for the statutory period.

We therefore affirm the decree of the trial court quieting appellees' title in and to the lands hereinbefore described.

AFFIRMED.